UNITED STATES of America,
Plaintiff–Appellee,

v.

Anthony Walter SMITH, also known as
"Cricket", Defendant–Appellant.

No. 93–1066.

United States Court of Appeals,
Tenth Circuit.

May 17, 1994.

Barbara S. Blackman, of Cherner and Blackman, Denver, CO, for defendant-appellant.

Jo Ann Harris, Asst. Atty. Gen., Geoffrey Greiveldinger, Acting Chief, Hope P. McGowan, Trial Atty., Crim. Div., Narcotic & Dangerous Drug Section, U.S. Dept. of Justice, Washington, DC, and James R. Allison, Interim U.S. Atty., Guy Till, Asst. U.S. Atty., and Kathleen Tafoya, Asst. U.S. Atty., of counsel, Denver, CO, for plaintiff-appellee.

Before SEYMOUR, Chief Judge, McKAY, and BALDOCK, Circuit Judges.

SEYMOUR, Chief Judge.

Mr. Anthony Walker Smith appeals his convictions on twenty-eight counts arising from crack cocaine trafficking, including charges of engaging in a continuing criminal enterprise, conspiracy, crack cocaine distribution, and money laundering. The district court sentenced him to life in prison on seven of the counts, and concurrent sentences of 360 and 240 months on the rest of the counts. Mr. Smith argues, *inter alia,* that the evidence was insufficient to sustain his conviction for continuing criminal enterprise; that the district court committed plain error in failing to instruct the jury as to persons who could not be considered as part of the continuing criminal enterprise; that he was deprived of his statutory right to a speedy trial; and that his prosecution under 21 U.S.C. § 841(b) violated his right to equal protection under the law. We affirm.

I.

This case encompasses a large number of individuals in various capacities who are involved in Denver crack cocaine sales tied to Los Angeles. We will only outline the facts that are relevant to the issues that Mr. Smith raises.

Gary Burrell, who knew Mr. Smith and several other people connected with these drug sales, was arrested in Denver on state charges. He agreed to help local and federal officers by becoming an informant. Mr. Burrell was released on bond, and the next day he gave police crack cocaine which he said he had purchased from Mr. Smith. Mr. Burrell then cooperated with the police in a series of controlled purchases of narcotics. He made several such purchases from Mr. Smith. At one of these buys, Mr. Smith arrived in his Jeep with Anthony Blan as a passenger. Mr. Blan got out of the car with the crack and gave it to the undercover officer in exchange for the money.

The police began investigating how the cocaine was being transported from Los Angeles to Denver. They discovered that Toya Dumas had transported cocaine for Mr. Smith on numerous occasions. After one of these trips, Mr. Smith sent Cheryl Johnson to Ms. Dumas' hotel room in Denver to pick up the crack for him. On another of Ms. Dumas' trips for Mr. Smith, DEA agents stopped her at the Los Angeles airport and confiscated more than $6,000 in cash, which she said belonged to Mr. Smith.

Sharon Moore and Marla Hunter worked as distributors of crack for Mr. Smith in Denver. Ms. Hunter also fronted drugs for others to sell. Mr. Blan and Sean Cooper obtained crack from Mr. Smith. All but one of their purchases were made on a cash basis.

Victor Pugh and Darryl Mason constituted one source of Mr. Smith's California drug supply. Mr. Pugh testified that he and Mr. Mason always required money from Mr. Smith before they would give him the crack because Mr. Smith wanted the cocaine processed for sale in Denver in a manner that was no longer popular in Los Angeles.

An investigation of Western Union records revealed that Mr. Smith, under a variety of names, made wire transfers of approximately $160,000 to various individuals in California. These recipients included his father, Anthony Smith, Sr., his mother, Eva Smith, his sister, Monique Jones, and his girlfriend, Angela Butler.

## II.

■ Mr. Smith first argues that the evidence was insufficient to sustain his conviction for continuing criminal enterprise under 21 U.S.C. § 848. In assessing this claim, we review the evidence and all reasonable inferences that may be drawn from it in the light most favorable to the government to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Apodaca,* 843 F.2d 421, 425 (10th Cir.), *cert. denied,* 488 U.S. 932, 109 S.Ct. 325, 102 L.Ed.2d 342 (1988).

To be convicted of engaging in a continuing criminal enterprise, a defendant must have acted "in concert with five or more other persons with respect to whom [the defendant] occupies a position of organizer, a supervisory position, or any other position of management." 21 U.S.C. § 848(c)(2)(A). Mr. Smith contends the government did not have enough evidence that he organized, supervised, or managed five or more persons. He concedes that Ms. Dumas, Ms. Hunter, and Ms. Moore fit the statutory definition, but claims that these three are the only people that do.

■ We have previously determined that the concepts of organize, supervise and manage must be given their "'everyday meanings.'" *United States v. Dickey,* 736 F.2d 571, 587 (10th Cir.1984) (quoting *United States v. Mannino,* 635 F.2d 110, 117 (2d Cir.1980)), *cert. denied,* 469 U.S. 1188, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985). An organizer arranges a number of people engaged in separate activities into an essentially orderly operation. *Apodaca,* 843 F.2d at 426. "'[A] relationship of supervision is created when one person gives orders or directions to another person who carries them out.'" *Id.* (quoting *United States v. Stratton,* 779 F.2d 820, 827 (2d Cir.1985), *cert. denied,* 476 U.S. 1162, 106 S.Ct. 2285, 90 L.Ed.2d 726 (1986)). "The defendant's relationships with the other persons need not have existed at the same time, the five persons involved need not have acted in concert at the same time or with each other, and the same type of relationship need not exist between the defendant and each of the five." *Id.*

Under these standards, we conclude that Mr. Smith's relationships with at least two other persons, Mr. Blan and Ms. Johnson, meet the statutory definition. In one of the controlled buys made by Mr. Burrell and an undercover officer, Mr. Burrell testified that he paged Mr. Smith and arranged for a crack purchase. Mr. Smith arrived with Mr. Blan as a passenger in his car. When the vehicle stopped, Mr. Blan exited the vehicle and got into the car with Mr. Burrell and the officer. He carried out the actual exchange of crack for money with the undercover officer. From this testimony, a reasonable jury could infer that Mr. Smith was supervising Mr. Blan.

Ms. Dumas testified that after one of the trips she made transporting crack cocaine for Mr. Smith from Los Angeles to Denver, Ms. Johnson picked up the crack from her. Ms. Dumas also testified that Mr. Smith called her and told her that Ms. Johnson would be coming to collect the drugs. A reasonable jury could also infer from this testimony that Mr. Smith supervised Ms. Johnson. We therefore hold there was sufficient evidence to convict Mr. Smith for continuing criminal enterprise.

## III.

■ Mr. Smith next argues that the district court committed plain error in failing to instruct the jury as to persons who could not be considered part of the continuing criminal enterprise. We review the district court's failure to give this instruction for plain error because Mr. Smith did not request it below. *See United States v. Sides,* 944 F.2d 1554, 1561 (10th Cir.) *cert. denied,* —— U.S. ——, 112 S.Ct. 604, 116 L.Ed.2d 627 (1991). In order to reverse under the plain error standard, we must find that an error was made, that it was "clear" or "obvious", and that it affected a substantial right. *United States v. Olano,* —— U.S. ——, ———–——, 113 S.Ct. 1770, 1777–78, 123 L.Ed.2d 508 (1993).

■ Mr. Smith asserts that several people the government urged the jury to consider, *i.e.,* Mr. Pugh, Mr. Mason, and the California recipients of Western Union transfers, cannot as a matter of law be counted as part of the continuing criminal enterprise. Mr. Smith claims that because the jury may have

included some of these individuals in reaching its verdict, plain error was committed when the trial court did not instruct the jury it could not consider them as part of the continuing criminal enterprise. Mr. Smith cites a Ninth Circuit case which holds that "where the jury had a confusing array of persons presented, some of whom could be counted and some of whom could not be counted, it was plain error to fail to instruct the jury as to who could not count towards [defendant's] conviction of a continuing criminal enterprise." *United States v. Jerome,* 924 F.2d 170, 173 (9th Cir.1991), *superseded by,* 942 F.2d 1328 (1991).

We need not decide whether such an instruction is required in a case where the prosecution urges the consideration of people who as a matter of law do not meet the continuing criminal enterprise definition. In *Jerome,* 924 F.2d at 172, the government conceded on appeal that five of the persons the prosecutor had urged the jury to consider could not be counted. The government does not make this concession in this case. Moreover, it is not clear or obvious that Mr. Pugh, Mr. Mason, and the recipients of the Western Union cash transfers could not legally have been considered by the jury.

As for Mr. Pugh and Mr. Mason, a "mere buyer-seller relationship, *without more,* would be insufficient" to include them as part of the continuing criminal enterprise. *Apodaca,* 843 F.2d at 426. The jury heard testimony, however, that Mr. Smith gave these sellers money, told them to prepare the crack in a form that would be difficult to sell in Los Angeles, and had them deliver the finished product to him. Given this evidence, we cannot say it was so clear as to constitute plain error that Mr. Smith did not organize the activities of Mr. Pugh and Mr. Mason.

As for the recipients of the Western Union cash transfers, Mr. Smith would call them and tell them when and where to pick up money. It is true that innocent participants in a criminal activity may not be counted as part of a continuing criminal enterprise. *See Jeffers v. United States,* 432 U.S. 137, 148–50, 97 S.Ct. 2207, 2214–15, 53 L.Ed.2d 168 (1977) (the word "concert" requires an agreement among the persons involved in the continuing criminal enterprise). Given all of the evidence regarding the drug transactions here, however, it is not clear

that the recipients of the Western Union cash transfers from Mr. Smith were unaware they were picking up drug proceeds and thus enabling the criminal activity. It is therefore not obvious that these individuals were not organized, supervised, or managed by Mr. Smith. The district court thus did not commit plain error when it failed to instruct the jury it could not consider them as part of the continuing criminal enterprise.

### IV.

Mr. Smith next argues that the district court violated his right to a speedy trial by granting an "ends of justice" continuance pursuant to 18 U.S.C. § 3161(h)(8) to allow his counsel time to prepare against a superseding indictment. He asserts that "[g]iven the untimeliness of the indictment, the length of time Mr. Smith had been detained, and Mr. Smith's demand for trial, granting an 'ends of justice' continuance constituted an abuse of discretion." Aplt. Br. at 21.

After several delays, mostly due to actions of Mr. Smith, the court set his trial date for August 31. On August 26, the government requested a two week continuance, based upon an alleged inability to locate a key witness. On August 27, the fourth superseding indictment was returned. At a hearing on August 28, Mr. Smith argued that the government did not show it had diligently looked for the witness and that it had obtained the new indictment merely to assure the grant of its request for a continuance. The government asserted that the superseding indictment added charges based on new information only recently available.

Under certain circumstances, a district court may force the government to trial on the earlier indictment. *See United States v. Bowen,* 946 F.2d 734, 736 (10th Cir.1991). In general, however, a superseding indictment may be returned any time before trial on the merits of an earlier indictment. *See United States v. Herbst,* 565 F.2d 638, 643 (10th Cir.1977); *see also Bowen,* 946 F.2d at 736 (if two indictments are pending against defendant, government may select which one to bring to trial). Here, the re-

cently acquired information substantiating new charges provided the government with ample grounds for seeking a superseding indictment.

■ The Speedy Trial Act "places broad discretion in the District Court to grant a continuance when necessary to allow [defense counsel] further preparation." *United States v. Rojas–Contreras,* 474 U.S. 231, 236, 106 S.Ct. 555, 558, 88 L.Ed.2d 537 (1985). If the district court had not granted a continuance in Mr. Smith's case, he would have had to go to trial with only five days to prepare a case on a superseding indictment which contained eight new counts against him. Under these circumstances, the trial court did not abuse its discretion in granting a continuance.

## V.

■ Mr. Smith also contends that 21 U.S.C. § 841(b) is unconstitutional as applied, in violation of Fifth Amendment equal protection guarantees. He claims that cocaine base (crack cocaine) and cocaine hydrochloride (powder cocaine) are essentially the same drug, and therefore he could have been prosecuted under provisions governing either drug. During trial, Mr. Smith provided statistics showing that almost all persons convicted for cocaine base offenses are black and the majority of those prosecuted for cocaine hydrochloride offenses are white. He thus argues that charging blacks (including himself) under crack cocaine provisions, which carry higher penalties than those provided for powder cocaine, constitutes invidious racial discrimination.

We have rejected the argument that cocaine base and cocaine hydrochloride are the same drug. *See United States v. Turner,* 928 F.2d 956, 960 n. 1 (10th Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 230, 116 L.Ed.2d 187 (1991). We have also rejected equal protection challenges to section 841(b) based on the disproportionate impact of sentences for cocaine base offenses on blacks. *United States v. Easter,* 981 F.2d 1549, 1559 (10th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 2448, 124 L.Ed.2d 665 (1993). Mr. Smith's claim is therefore not sustainable.

We have reviewed Mr. Smith's other arguments and find no reversible error. Mr. Smith's convictions are therefore AFFIRMED.