We therefore AFFIRM the judgment of the district court.

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**James Norwood HUTCHING, also known as Norwood, also known as "Cowboy", Defendant–Appellant.**

**No. 93–7043.**

United States Court of Appeals, Tenth Circuit.

Feb. 5, 1996.

---

in order to reflect policies accepted by Congress. Here, because Amdura wholly owned Andco and

because Andco cannot avail itself of the equitable remedies it seeks, this result is compelled.

Joseph (Sib) Abraham Jr., El Paso, Texas, for Defendant–Appellant.

Robert J. Erickson, Attorney, Department of Justice, Washington, DC (John Raley, United States Attorney, Sheldon J. Sperling and Paul G. Hess, Assistant United States Attorneys, Muskogee, Oklahoma, with him on the brief), for Plaintiff–Appellee.

Before SEYMOUR, Chief Judge, ANDERSON and KELLY, Circuit Judges.

PAUL KELLY, Jr., Circuit Judge.

Defendant-appellant James Norwood Hutching challenges his convictions for drug conspiracy, 21 U.S.C. § 846 (Count 1); possession with intent to distribute marijuana, 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(vii), and 18 U.S.C. § 2 (Count 2); possession with intent to distribute cocaine, 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 18 U.S.C. § 2 (Counts 3–5); attempt to possess with intent to distribute cocaine, 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846, and 18 U.S.C. § 2 (Count 6); interstate travel to promote racketeering, 18 U.S.C. §§ 1952, 2 (Counts 7–12, 28); conspiracy, 18 U.S.C. § 371 (Count 13); interstate travel with intent to commit murder, 18 U.S.C. §§ 1958, 2 (Count 14); continuing criminal enterprise, 21 U.S.C. § 848(a) (Count 15); killing of an individual in furtherance of a continuing criminal enterprise, 21 U.S.C. §§ 848(a), (e)(1)(A), and 18 U.S.C. § 2 (Count 16); receipt or possession of an unregistered firearm, 26 U.S.C. § 5861(d) and 18 U.S.C. § 2 (Count 17); possession of a firearm after a felony conviction, 18 U.S.C. §§ 922(g), 924(a)(2) (Counts 18–20); possession with intent to distribute marijuana, 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count 21); carrying a firearm during the commission of a drug trafficking crime, 18 U.S.C. § 924(c)(1) and 18 U.S.C. § 2 (Count 22); money laundering, 18 U.S.C. §§ 1956(a)(1)(A)(i), (a)(1)(B)(i), 2 (Counts 23–24); and distribution of marijuana, 21 U.S.C.

§ 841(a)(1) (Count 29). Our jurisdiction arises under 28 U.S.C. § 1291. We remand to the district court with instructions to vacate Mr. Hutching's conviction for drug conspiracy (Count 1); we affirm all the other convictions.

### Background

The basic facts of this case are set out in *United States v. McCullah*, 76 F.3d 1087, (10th Cir.1996), and need not be restated here.

### Discussion
#### I. *Caldwell* Violation

■ Mr. Hutching claims that the trial court erred by informing the jury of the possibility of appellate review. At the conclusion of voir dire, the trial judge, explaining side bar conferences to the jury, stated in part:

So that's the reason we have this conference, but it's always about things that I have to decide, that I have to make decisions about. And the court reporter is always there so it's taken down. There aren't any secrets. That's an official record. And if I make a decision—for example, if we are over here discussing whether or not some evidence ought to be admitted, some lawyer presents some evidence—asks a question and there is an objection. And I say, "Well, let's talk about this over here." I seek their advice over here. And if I say, "No, that's not a proper question, I'm not going to ask it," but there is a record made of it, and if I was wrong about it, in error, then there is an official record made of it. Somebody could appeal on that basis, if I've made a big enough boo boo that the whole thing ought to be reversed, or a new trial, then it can be. So I want you to know that even though we talk out of your hearing, that a record is being made of everything that we talk about over here.

32 R. 84–85. Defense counsel timely objected to these statements by the trial court. Mr. Hutching argues that these statements created the danger that the jury would minimize its own role in the criminal process and deprived him of due process and a fair trial.

■ Mr. Hutching relies on *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), to support his contention that the trial court's remarks were prejudicial. In *Caldwell*, the prosecutor stated to the jury in closing argument of the penalty phase of a capital case:

Now, [defense counsel] would have you believe that you're going to kill this man and they know—they know that your decision is not the final decision. My God, how unfair can you be? Your job is reviewable. They know it.... For they know, as I know, and as Judge Baker has told you, that the decision you render is automatically reviewable by the Supreme Court.

*Caldwell*, 472 U.S. at 325–26, 105 S.Ct. at 2638 (plurality opinion). Concluding that such remarks lessened the jury's sense of responsibility for its decision, the Supreme Court held that "it is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere." *Id.* at 328–39, 105 S.Ct. at 2639 (plurality opinion).

■ As an initial issue, the government contends that Mr. Hutching lacks standing to raise a *Caldwell* claim. We agree. *Caldwell* was particularly directed to the unique nature of a death sentence, and the opinion in *Caldwell* was based upon the "quantitative difference of death from all other punishments [which] requires a correspondingly greater degree of scrutiny of the capital sentencing determination." *Id.* at 329, 105 S.Ct. at 2639 (plurality opinion). Mr. Hutching was not sentenced to death and thus lacks standing to allege a *Caldwell* violation. *Cf. Caldwell*, 472 U.S. at 341, 105 S.Ct. at 2646 (the judgment in Caldwell was only "reversed to the extent that it sustains imposition of the death penalty"). The Supreme Court has not extended *Caldwell* beyond the capital sentencing realm, and we decline to do so here.

■ Even if Mr. Hutching had standing to challenge the trial court's remarks (as his codefendant, Mr. McCullah, does), we do not find that the remarks constitute a *Caldwell*

violation. The Supreme Court has "read *Caldwell* as 'relevant only to certain types of comment—those that mislead the jury as to its role in the sentencing process in a way that allows the jury to feel less responsible than it should for the sentencing decision.'" *Romano v. Oklahoma*, — U.S. —, —, 114 S.Ct. 2004, 2010, 129 L.Ed.2d 1 (1994) (quoting *Darden v. Wainwright*, 477 U.S. 168, 183 n. 15, 106 S.Ct. 2464, 2472 n. 15, 91 L.Ed.2d 144 (1986)). *See also Hopkinson v. Shillinger*, 888 F.2d 1286, 1293 (10th Cir. 1989) (en banc), *cert. denied*, 497 U.S. 1010, 110 S.Ct. 3256, 111 L.Ed.2d 765 (1990). Here, the trial court was merely explaining how and why a record is made. The statements during voir dire did not tend to minimize the jury's responsibility with regard to the death sentence and referred only to the possibility of appellate review of the trial judge's errors during the trial, not the jury's responsibility during sentencing. In *Dugger v. Adams*, the Supreme Court stated, "[t]o establish a *Caldwell* violation, a defendant necessarily must show that the remarks to the jury improperly described the role assigned to the jury by local law." *Dugger v. Adams*, 489 U.S. 401, 407, 109 S.Ct. 1211, 1215, 103 L.Ed.2d 435 (1989). Mr. Hutching makes no such claim.

## II. Sufficiency of the Evidence

Mr. Hutching contends that there was insufficient evidence to support his convictions for engaging in a continuing criminal enterprise (Count 15) and for causing the intentional killing of an individual while engaging in a continuing criminal enterprise (Count 16).

In reviewing the sufficiency of evidence supporting a conviction, we examine the evidence, and all reasonable inferences to be drawn therefrom, in the light most favorable to the government and "'ask whether any rational juror could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Levine*, 41 F.3d 607, 610 (10th Cir.1994) (quoting *United States v. Arutunoff*, 1 F.3d 1112, 1116 (10th Cir.), *cert. denied*, — U.S. —, 114 S.Ct. 616, 126 L.Ed.2d 580 (1993)). "We consider both direct and circumstantial evidence and accept the jury's resolution of conflicting evidence and its assessment of the credibility of witnesses." *Levine*, 41 F.3d at 610.

### A. Count 15

Mr. Hutching claims that the evidence fails to establish that he occupied "a position of organizer, a supervisory position, or any other position of management" with respect to five other persons in the criminal enterprise as required by the statutory definition of engaging in a continuing criminal enterprise. *See* 21 U.S.C. § 848(c).* The terms "organizer," "manager," and "supervisor" as used in § 848(c) are given their "nontechnical, 'everyday meanings.'" *United States v. Jenkins*, 904 F.2d 549, 553 (10th Cir.), *cert. denied*, 498 U.S. 962, 111 S.Ct. 395, 112 L.Ed.2d 404 (1990). *See also United States v. Smith*, 24 F.3d 1230, 1233 (10th Cir.), *cert. denied*, — U.S. —, 115 S.Ct. 270, 130 L.Ed.2d 188 (1994). "[T]he defendant need not be the dominant organizer or manager of the enterprise; he need only occupy *some* managerial position with respect to five or more persons." *Jenkins*, 904 F.2d at 553 (emphasis in original). "An organizer arranges a number of people engaged in separate activities into an essentially orderly operation," and a supervisor gives orders or directions to another person who carries them out. *Smith*, 24 F.3d at 1233. *See also United States v. Apodaca*, 843 F.2d 421, 426 (10th Cir.), *cert. denied*, 488 U.S. 932, 109 S.Ct. 325, 102 L.Ed.2d 342 (1988).

---

* Section 848(c) provides:

For purposes of subsection (a) of this section, a person is engaged in a continuing criminal enterprise if—
(1) he violates any provision of this subchapter or subchapter II of this chapter the punishment for which is a felony, and
(2) such violation is a part of a continuing series of violations of this subchapter or subchapter II of this chapter—

(A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and
(B) from which such person obtains substantial income or resources.

21 U.S.C. § 848(c).

" 'The defendant's relationships with the other persons need not have existed at the same time, the five persons involved need not have acted in concert at the same time or with each other, and the same type of relationship need not exist between the defendant and each of the five.' " *Smith,* 24 F.3d at 1233 (quoting *Apodaca,* 843 F.2d at 426).

The evidence at trial established that Mr. Hutching acted both as an organizer and as a supervisor or manager. He oversaw the cross-country transportation of drugs for the Arvizu enterprise, and he helped arrange the drug-recovery operation. Mr. Hutching concedes that there was sufficient evidence of his supervision or management of at least three individuals: James Shiew, Herman "Buck" Thornton, and Ed Thayer. However, contrary to Mr. Hutching's contention, there was also sufficient evidence that he supervised at least two other members of the criminal enterprise: Claude "Gary" Bell and Melva Ford, and there was also substantial evidence of his organizational, supervisory and managerial role in the attempts to recover the stolen drugs.

#### i. Claude Bell

The evidence shows that Mr. Hutching employed Claude Bell as a bodyguard. Mr. Bell accompanied Mr. Hutching on several drug-conspiracy related trips and performed or helped perform various conspiracy-related tasks at Mr. Hutching's direction, including aiding in the transport of guns from the Oklahoma lake house to Tennessee. Although there was no direct evidence that Mr. Bell knew the drug-related nature of his activities, such knowledge can be inferred from the large amount of money Mr. Bell was promised for his efforts and the furtive nature of his trips with Mr. Hutching.

#### ii. Melva Ford

The evidence similarly indicates that Mr. Hutching supervised or managed Melva Ford. Mr. Hutching stored the pickup truck containing the cocaine at her residence after telling her that "[t]he truck is loaded." Even if the period of supervision may have been "quite brief" in duration, "someone who stores drugs for [a] defendant ... is also

within the ambit of the [continuing criminal enterprise] statute." *United States v. Ward,* 37 F.3d 243, 247 (6th Cir.1994), *cert. denied,* — U.S. ——, 115 S.Ct. 1388, 131 L.Ed.2d 240 (1995). The evidence indicated that Ms. Ford knew the drug-related nature of the shipment in her care; in fact her knowledge was what made her a prime suspect in the truck's disappearance.

#### iii. Drug Recovery Attempts

The evidence clearly revealed that Mr. Hutching played a pivotal role in the drug recovery efforts of the Arvizu organization. Mr. Wiscowiche testified that Mr. Hutching helped plan the initial drug recovery efforts and that Mr. Hutching personally led the group, which included Mr. Wiscowiche, Mr. Molina, and Mr. Sanchez, which attempted to kidnap Mr. Rogers from his home but was thwarted by the noises of farm animals. The evidence also indicated that Mr. Hutching supplied the weapons to the group at the lake house and participated in a planning meeting with Mr. Arvizu and Mr. Molina.

### B. Count 16

Mr. Hutching argues that because the evidence was not sufficient to establish that he was engaged in a continuing criminal enterprise, an essential element of the crime charged in Count 16 is lacking. Given our previous discussion holding there was sufficient evidence, we reject that argument. Mr. Hutching was indeed engaged in a continuing criminal enterprise, and the murder of Mr. Collins was part of that enterprise. Furthermore, the evidence was overwhelming that he was "working in furtherance" of the enterprise and that he "counsel[led], command[ed], induce[d], procure[d], or cause[d] the intentional killing" of Mr. Collins.

### III. Multiplicity of Counts 18, 19, and 20

Mr. Hutching claims that Counts 18, 19, and 20 are multiplicitous and consequently, convictions on all three counts cannot be upheld. Counts 18, 19, and 20 each charged Mr. Hutching with unlawfully possessing a firearm as a previously convicted felon under 18 U.S.C. §§ 922(g), 924(a)(2), but each count charged Mr. Hutching with

possession of a different firearm. Claims of multiplicity are subject to *de novo* review. *United States v. Wall,* 37 F.3d 1443, 1446 (10th Cir.1994).

The "simultaneous possession" of multiple firearms generally "constitutes only ... one offense" unless there is evidence that the weapons were stored in different places or acquired at different times. *United States v. Jones,* 841 F.2d 1022, 1023 (10th Cir.1988). *See also United States v. Bonavia,* 927 F.2d 565, 568–69 (11th Cir.1991). In this case, the three weapons, while all seized on the same day, were located at different sites; one was in Mr. Hutching's bedroom, one was in a car parked in his garage, and the other was in his pickup truck. The scattered locations of the guns constituted separate storages that permitted possession of each firearm to constitute a separate offense. *Accord United States v. Gann,* 732 F.2d 714, 721 (9th Cir.), *cert. denied,* 469 U.S. 1034, 105 S.Ct. 505, 83 L.Ed.2d 397 (1984) (separate counts for firearms separately stored or acquired).

### IV. Comments by Prosecutor and Trial Court

Mr. Hutching argues that certain comments by the prosecutor and by the trial court were highly prejudicial and denied him a fair trial. Mr. Hutching concedes that the two statements he complains of, standing alone, would not warrant reversal of his convictions, but contends that the cumulative effect of the statements, coupled with the other errors he alleges, constitutes reversible error. *United States v. Rivera,* 900 F.2d 1462, 1469 (10th Cir.1990). We disagree.

In his opening statement, the prosecutor, in introducing his trial team to the jury, introduced Assistant United States Attorney Paul Hess as "chief of our organized crime and drug enforcement task force." Mr. Hutching does not dispute that this was a true statement of Mr. Hess' position within the United States Attorney's Office, but objected to the description as unnecessary and prejudicial because of the sinister connotations of "organized crime." The prosecutor's statement, accurate albeit unnecessary, was not prejudicial.

Mr. Hutching also takes issue with a statement made by the trial judge after both sides had rested and the jury was about to begin its deliberations. The judge stated to the jury:

> It's about 10:30 [A.M], and I don't know how long it will take you to make a decision in this case. It may take just an hour or so. I mean it's conceivable you could make a decision before noon.
>
> We have ordered lunch for you, I guess.
>
> .... [I]f for some reason you make a decision before noon, well, we'll stay for it and you can go on, or you stay here and eat it, if you want to, if that's what you want to do afterwards.
>
> It may take you on into the afternoon. It's always possible it could take you on longer than that. If you should deliberate past another meal hour, you let us know.

56 R. 3838–39. The judge was seeking to make proper meal arrangements for the jury, rather than commenting on the evidence or the case. We find no error in the judge's remarks.

### V. Issues Raised by Codefendants

Mr. Hutching adopts all arguments advanced by his codefendants applicable to him and reasserts some arguments raised by his codefendants. We find merit in only one of these arguments.

Mr. Hutching, unlike his codefendants, was convicted of both drug conspiracy, 21 U.S.C. § 846, and continuing criminal enterprise, 21 U.S.C. § 848(a). The drug conspiracy count is a lesser included offense of the continuing criminal enterprise count, and thus we vacate the drug conspiracy conviction. *United States v. Stallings,* 810 F.2d 973, 975–76 (10th Cir.1987). We note that drug conspiracy is not a lesser included offense of Count 16, killing in furtherance of a continuing criminal enterprise, for the reasons set out in *United States v. McCullah,* 76 F.3d 1087 (10th Cir.1996).

We have carefully considered the other arguments and find them without merit both individually and cumulatively. *See United*

*States v. McCullah,* 76 F.3d 1087 (10th Cir. 1996).

Accordingly, we remand to the district court with instructions to VACATE the conviction and sentence on Count 1; we AFFIRM the remaining convictions and sentences.