# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-00078-COA

**KEDRICK TEVON LEE A/K/A KEDRICK LEE**           **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**           **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 11/09/2021 |
| TRIAL JUDGE: | HON. ROBERT B. HELFRICH |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: JUSTIN TAYLOR COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: DANIELLE LOVE BURKS |
| DISTRICT ATTORNEY: | PATRICIA A. THOMAS BURCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 08/29/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., WESTBROOKS AND LAWRENCE, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1.    On November 3, 2021, Kedrick Tevon Lee was convicted of first-degree murder, two counts of felon in possession of a firearm, and one count of tampering with physical evidence.  He was sentenced as a habitual offender to serve life in prison for first-degree murder, two ten-year terms in custody for possession, set to run consecutively to each other and the life term, and ten years in custody for tampering with evidence, set to run concurrently with the other three sentences, without eligibility for parole, probation, or early release.  Lee now appeals, arguing that his two convictions for felon in possession of a firearm are unlawful, his indictment was defective, there was insufficient evidence to convict

him of tampering with evidence, and, thus, retroactive misjoinder should be applied. Upon review, this Court affirms Lee's conviction and sentence for first-degree murder, merges the two counts of felon in possession of a firearm and remands for sentencing on that one count, and reverses and remands for a new trial on the charge of tampering with physical evidence.

## FACTUAL BACKGROUND

¶2. On May 27, 2020, authorities questioned a man named TeDarron Price regarding the murder of Lee's brother Rhakim James, which had occurred approximately one week earlier. Price was eliminated as a suspect and returned home. Later that night, Price and several others gathered in the parking lot of Fat Boys, a store located in Hattiesburg, Mississippi. At approximately 9:12 p.m., a black Dodge Avenger pulled over near the store and let out a single passenger before pulling away and parking on the opposite side of the store. The passenger who was dropped off was dressed in all black and wearing a face mask. He walked down the street and joined the crowd gathered in the parking lot. The passenger was later identified as Lee.

¶3. Shortly after Lee arrived, an argument began within the crowd. At approximately 9:14 p.m., the verbal altercation became physical when Micharlos James, the brother of Lee and the deceased Rhakim James, punched Price. The two struggled briefly before Price was able to escape the confrontation. As Price stepped away from the crowd, Lee drew two firearms, one in each hand, and shot Price in the back multiple times. Lee immediately fled the scene on foot. When authorities arrived at the scene, Price was found lying in the parking lot

2

suffering from multiple gunshot wounds. He was transported to Forrest General Hospital but ultimately died from his injuries. The coroner counted a total of thirteen gunshot wounds on Price's body.

¶4. Three days later, Lee was interviewed by Detective Jeremy Dunaway at the Hattiesburg Police Department. After being informed of his *Miranda*[1] rights, Lee positively identified himself in the parking-lot surveillance footage and admitted to shooting Price. He also disclosed that the two firearms he had used in the shooting were his own .380-caliber handgun and a 9mm handgun that belonged to his deceased brother. Lee stated that he "fled the scene toward Duke Avenue" and was picked up by his friend "T-West."[2] T-West drove Lee to Kamper Park and dropped him off. Lee left both firearms in T-West's car because "he didn't want to get caught riding around with them." At some point, Lee also discarded the black sweatshirt he was wearing that night. Neither of the guns nor the sweatshirt was ever recovered by authorities.

¶5. On November 30, 2020, Lee was indicted[3] by a grand jury on four counts—one count of first-degree murder, two counts of felon in possession of a firearm, and one count of

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[2] The record refers to this person only by his nickname "T-West."

[3] On October 22, 2021, the State filed a motion to amend Lee's indictment to correct a spelling error in the victim's name. No substantive changes were made.

tampering with physical evidence.[4] Lee entered a plea of not guilty to all four counts. His trial began on November 2, 2021. The State opened by introducing into evidence Lee's previous guilty plea to possession of a stolen firearm to support the State's categorization of Lee as a prior felon and habitual offender.[5]

¶6. In addition, the State called ten witnesses to testify about the shooting, including Price's mother, medical officials who examined Price's wounds, and multiple investigators who were involved in the case. Of note, Detective Dunaway testified about his recorded interview with Lee in which he admitted to being dropped off, carrying two firearms on the night of the murder, and shooting Price. A recording of the interview was subsequently played for the jury. The State additionally presented a projectile recovered from Price's neck, eleven shell casings, three projectiles found on the scene, and multiple photographs of Price's injuries. The jury also was able to view the video surveillance footage taken from the four surveillance cameras at Fat Boys. One of the angles showed the figure identified as Lee arriving, and another angle showed the entire shooting unfolding. Lee did not call any witnesses in his defense. The trial concluded on November 3, 2021, and Lee was convicted

---

[4] Specifically, Lee was charged with first-degree murder in violation of Mississippi Code Annotated section 97-3-19(1)(a) (Supp. 2017), two counts of felon in possession of a firearm in violation of section 97-37-5 (Rev. 2014), and one count of tampering with physical evidence in violation of section 97-9-125(1)(a) (Supp. 2017).

[5] Lee previously pled guilty to possession of a stolen firearm on August 31, 2017.

and sentenced as a habitual offender for all four charges.[6]

## ANALYSIS

¶7.    Lee now appeals, alleging that (1) multiple convictions of felon in possession of a firearm are not permitted by Mississippi law; (2) his indictment was defective, and the jury received improper instructions; (3) there was insufficient evidence for a conviction of tampering with physical evidence; and (4) the doctrine of retroactive misjoinder applies. We address these arguments in three parts.

### I.    Multiple Convictions of Felon in Possession of a Firearm

¶8.    Lee first argues that his two convictions of felon in possession of a firearm were unlawful. This argument is based upon a case of first impression from the Mississippi Supreme Court in an opinion that issued the day after Lee's sentencing, *McGlasten v. State*, 328 So. 3d 101 (Miss. 2021). In *McGlasten*, a felon was "caught with four guns in a small residence" and consequently "charged with and convicted of four separate violations" of Mississippi's felon in possession of a firearm statute. *Id.* at 102 (¶1). On appeal, McGlasten argued that the four convictions violated his constitutional protection against double jeopardy. *Id.* at 103 (¶10). The supreme court agreed, holding "the simultaneous possession of multiple firearms generally constitutes only one offense under Section 97-37-5(1) unless there is evidence that the weapons were stored in different places or acquired at different

---

[6]  Lee's sentencing as a habitual offender was pursuant to section 99-19-81 (Supp. 2018).

times." *Id.* at 107 (¶27) (internal quotation marks omitted) (quoting *United States v. Hutching*, 75 F.3d 1453, 1460 (10th Cir. 1996)).

¶9.     The instant case presents a similar scenario: Lee was charged with and convicted of two counts of felon in possession of a firearm. This result is permitted only if the State presented evidence that Lee stored the weapons in different locations or acquired them at different times. *See id.* There is no evidence in the record to suggest Lee stored the two firearms in different places. He admitted in his interview with Detective Dunaway that he had been carrying two firearms that night, a .380-caliber handgun and a 9mm handgun, with one in each pocket. The surveillance footage of the shooting confirms that Lee fired two guns, one in each hand, at Price on the night of his murder. Further, the State did not present any evidence suggesting that the guns were acquired at different times. While the record is clear that one firearm was Lee's and that the other was his brother's, the State never addressed the timing of Lee's acquisition of the firearms. With no evidence to suggest that the case before us fits one of the two exceptions in *McGlasten*, this Court agrees with Lee—his two separate convictions for the same crime were unlawful pursuant to Mississippi Supreme Court precedent. *See id.*

¶10.    While the State concedes this point, the State disagrees with Lee on the appropriate recourse. Lee asserts that he is entitled to a reversal and rendering of acquittal, while the State argues that this Court should merge the two counts and remand that singular count for sentencing. We agree with the remedy the State proposes. "The correct and widely followed

approach to dealing with multiplicitous counts is to merge the wrongly charged multiplicitous counts into one single count of conviction." *Id.* at 108 (¶29). *McGlasten* determined that the proper redress would be "vacating all but one of McGlasten's four convictions and resentencing him on the remaining count of conviction." *Id.* (citing *United States v. Barrett*, 496 F.3d 1079, 1095 (10th Cir. 2007)). Accordingly, we merge Counts II and III into a single count of possession of a firearm by a felon and remand this conviction for sentencing.

## II. Tampering with Physical Evidence

¶11. Lee next asserts several errors involving his conviction of tampering with physical evidence, including the language in the indictment, the instructions given to the jury, and the sufficiency of the evidence presented.

### A. Indictment

¶12. Lee claims that his conviction of tampering with evidence should be reversed and rendered because the indictment failed to track the language of its corresponding statute.[7] This Court utilizes "a de novo standard of review when a defendant challenges the legal sufficiency of an indictment." *Lewis v. State*, 295 So. 3d 521, 531 (¶26) (Miss. Ct. App. 2019) (citing *Beal v. State*, 86 So. 3d 887, 891 (¶9) (Miss. 2012)). When addressing the legal

---

[7] Lee also notes that the indictment did not list the precise subsection of Mississippi Code Annotated section 97-9-125 he was alleged to have violated. However, this Court has established that so long as the indictment can sufficiently inform a defendant of the charges against him, "the State is not required to distinguish the subsections in every indictment." *Spears v. State*, 294 So. 3d 637, 642 (¶13) (Miss. Ct. App. 2019) (quoting *State v. Hawkins*, 145 So. 3d 636, 642 (¶16) (Miss. 2014)).

sufficiency of an indictment, we require "a plain, concise and definite written statement of the essential facts and elements constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation." MRCrP 14.1(a)(1); *accord Mitchell v. State*, 327 So. 3d 142, 151 (¶40) (Miss. Ct. App. 2021) (quoting *Taylor v. State*, 94 So. 3d 298, 305 (¶15) (Miss. Ct. App. 2011) ("[T]he purpose of an indictment is to satisfy the constitutional requirement that a defendant be informed of the nature and cause of the accusation." (internal quotation marks omitted))).

¶13.    The relevant portion of Lee's indictment alleged as follows:

> [I]n Forrest County, Mississippi, on or about May 27, 2020, [Lee] did unlawfully, feloniously, intentionally or knowingly, while believing an official proceeding is pending or may be instituted, and acting without legal authority, did dispose of the .9mm handgun and the .380 handgun used in the shooting of TeDarr[]on Price, and against the peace and dignity of the State of Mississippi.

In comparison, the statute addressing tampering with physical evidence provides as follows:

> A person commits the crime of tampering with physical evidence if, believing that an official proceeding is pending or may be instituted, and acting without legal right or authority, he: (a) [i]ntentionally destroys, mutilates, conceals, removes or alters physical evidence with intent to impair its use, verity or availability in the pending criminal investigation or prospective official proceeding . . . .

Miss. Code Ann. § 97-9-125.[8]

---

[8] The omitted subsections provide:

(b) [k]nowingly makes, presents or offers any false physical evidence with intent that it be introduced in the pending or prospective official proceeding . . . (c) [i]ntentionally prevents the production of physical evidence by an act

8

¶14. Lee first takes issue with the language in his indictment substituting "destroys, mutilates, conceals, removes or alters" with the word "dispose." In his own words, "the statute lists specific verbs to assign criminal liability[,]" so this substitution renders the entire count of the indictment defective. But Lee overlooks that "[i]t is not essential . . . that the exact descriptive language of the statute be used. Equivalent words of *substantially the same meaning* as those of the statute may be substituted." *Gilmer v. State*, 955 So. 2d 829, 837 (¶26) (Miss. 2007) (emphasis added) (quoting *Price v. State*, 898 So. 2d 641, 654 (¶32) (Miss. 2005)). The State maintains that its choice of words has substantially the same meaning as those contained within the statute. We agree.

¶15. "Dispose of" is defined as "get[ting] rid of" or "throwing away."[9] Conversely, "destroy" is defined as "put[ting] an end to," and "conceal" is defined as "keep[ing] from sight," "hid[ing]," and "keep[ing] from being observed or discovered."[10] This language is

of force, intimidation or deception against any person, or threatens, harasses or intimidates a witness or a person he reasonably believes may be a witness in a criminal investigation to not provide physical evidence or to hide, destroy or alter physical evidence or (d) [s]olicits, encourages or assists another person to destroy, hide or conceal evidence of any type if it is reasonably likely the state or federal authorities would use the evidence during the prosecution of a criminal act by the state or federal authorities.

Miss. Code Ann. § 97-9-125 (Rev. 2017).

[9] *Dispose of*, New Oxford American Dictionary 502 (3d ed. 2010).

[10] *Destroy*, Oxford Dictionary, *supra* note 9, at 473; *conceal*, *id*. at 358; The American Heritage Dictionary, https://www.ahdictionary.com/word/search.html?q=conceal (last visited Aug. 28, 2023).

9

substantially similar enough to provide notice to Lee of the crime for which he was being charged. In his statement made to police that was played for the jury, Lee admitted that he left (or disposed of) both firearms in T-West's car after committing the murder because he did not want "to get caught riding around with them." Given the circumstances, Lee's disposal of the firearms is unquestionably akin to destroying or concealing them. Indeed, Lee's destroying or concealing the firearms would have yielded the same result as disposing of them—preventing authorities from recovering them. We find that the indictment's usage of "dispose of" is simply an equivalent word that has "substantially the same meaning" as those found in the statute.

¶16.    Lee also takes issue with the exclusion of language stating that the tampering was done "with intent to impair its use, verity or availability in the pending criminal investigation or prospective official proceeding[.]" But an indictment's language will be deemed adequate "[w]here [it] . . . is sufficiently specific to give notice of the act made unlawful, and exclusive enough to prevents its application to other acts." *Gilmer*, 955 So. 2d at 837 (¶26) (quoting *Price*, 898 So. 2d at 654 (¶32)). The indictment alleged that Lee disposed of the firearms "while believing an official proceeding is pending or may be instituted" against him. We find while it is safer practice to track the language of the statute, the language used was adequate in providing Lee notice of the crime for which he was being charged.

### B.    Jury Instructions

¶17.    Lee also argues that an essential element of the crime was excluded from jury

instruction S-10.[11]  The relevant jury instruction provided as follows:

> The Defendant, Kedrick Tevon Lee, has been charged with the crime of tampering with physical evidence in Count Four of the indictment. If you find from the evidence in this case, beyond a reasonable doubt, that:
>
> > 1. That Kedrick Lee, in Forrest County Mississippi,
> > 2. On or about May 27, 2020, Kedrick Tevon Lee did willfully, unlawfully, and feloniously, while acting without legal authority, did dispose of a 9mm and .380 handgun, used in the shooting of Tedarron Price,
> > 3. at a time when the defendant, Kedrick Tevon Lee, believed an official proceeding is pending or may be instituted against him;
>
> then you shall find the Defendant, Kedrick Tevon Lee, guilty as charged of tampering with physical evidence in Count Four of the indictment.
>
> If you find that the State has failed to prove, beyond a reasonable doubt, any one or more of the elements of the crime of [t]ampering with physical evidence, you will find the Defendant, Kedrick Tevon Lee not guilty in Count Four of the indictment.

The instruction did not include that the evidence was disposed of "with intent to impair its use, verity or availability in the pending criminal investigation or prospective official proceeding."

¶18.    Notably, this is the first time Lee has raised an issue with this jury instruction.[12]  The record indicates that Lee's counsel did not object to the instruction, stating:

---

[11]  Lee argues again that the "dispose of" language constitutes error but, our position on the indictment stands for the jury instructions as well.

[12]  Lee's motion for a directed verdict during trial addressed only the premeditation aspect of first-degree murder.  His motion for judgment notwithstanding the verdict addressed the jury instructions only in arguing he was entitled to a manslaughter instruction.

11

| | |
|---|---|
| [THE COURT]: | So this will be S-6, form of the verdict[13] for Count I? |
| MR. RAY: | No objection. |
| THE COURT: | Will be given. This one is marked S-8, form of the verdict for Count III? |
| MR. RAY: | No objection. |
| THE COURT: | Will be given. S-9, form of verdict for Count II? |
| MR. RAY: | Is it marked as S-7? |
| THE COURT: | I don't have it marked. It's Count II, form of the verdict. |
| MR. RAY: | No objection. |
| THE COURT: | Will be given. S-10, form of the verdict for Count IV? |
| MR. RAY: | No objection. |

¶19. This Court has long held, "To preserve a jury instruction issue on appeal, the defendant must make a specific objection to the proposed instruction to allow the trial court to consider the issue." *Sands v. State*, 315 So. 3d 1066, 1070 (¶10) (Miss. Ct. App. 2020) (quoting *Harris v. State*, 861 So. 2d 1003, 1013 (¶18) (Miss. 2003)); *accord Ray v. State*, 828 So. 2d 827, 834 (¶20) (Miss. Ct. App. 2002) (citing *Douglas v. Blackmon*, 759 So.2d 1217, 1220 (¶9) (Miss. 2000) ("[T]he law requires such objections to be raised in a timely manner that would permit the trial court, were it to conclude the objection had merit, to remedy the situation before the jury was actually instructed.")).

¶20. However, this Court may review the issue even without an objection at trial from Lee if "[the] trial court committed plain error[.]" *Scott v. State*, 231 So. 3d 1024, 1034 (¶33) (Miss. Ct. App. 2016) (citing *Williams v. State*, 61 So. 3d 981, 983 (¶11) (Miss Ct. App. 2011)). In the plain-error analysis, "[o]nly an error so fundamental that it creates a

---

[13] Although this record excerpt appears to refer to the instructions regarding the form of the verdict, it is obvious and clear that the trial court was discussing instructions relating to the element instructions.

12

miscarriage of justice rises to the level of plain error." *Id.* (quoting *Willis v. State*, 999 So.

2d 411, 414 (¶9) (Miss. Ct. App. 2008)). Plain error occurs only when the "substantive rights

of a defendant are violated." *Id.*

¶21.    The essential elements of tampering with physical evidence in terms of the relevant

subsection require that an individual, (1) believing that an official proceeding is pending or

may be instituted, (2) acting without legal right or authority, intentionally destroys, mutilates,

conceals, removes, or alters physical evidence (3) with the intent to impair its use, verity, or

availability in the pending criminal investigation or prospective official proceeding.[14]  The

intent of the defendant to impair the physical evidence's usage in such a proceeding is indeed

an essential element of the crime.

¶22.    Mississippi's appellate courts have previously held that the "failure to instruct the jury

on the essential elements of [a] crime is plain error." *Hodges v. State*, 285 So. 3d 711, 721

(¶41) (Miss. Ct. App. 2019) (quoting *Bolton v. State*, 113 So. 3d 542, 544 (¶4) (Miss. 2013));

*see also Davis v. State*, 980 So. 2d 951, 958 (¶12) (Miss. Ct. App. 2007) (quoting *Berry v.

State*, 728 So. 2d 568, 571 (¶6) (Miss. 1999)).  Most instructive of all, the Mississippi

Supreme Court has held that due to the importance of a criminal defendant's right to a trial

by jury, "it is *always and in every case* reversible error for the courts of Mississippi to deny

an accused the right to have a jury decide guilt as to *each and every element*." *Harrell v.*

---

[14]  There does not appear to be an appellate case defining the essential elements of tampering with physical evidence.  However, in reading the statute, the essential elements appear to be as stated.

13

*State*, 134 So. 3d 266, 275 (¶30) (Miss. 2014) (emphasis added).

¶23.　This Court has followed the supreme court's mandate in numerous cases. For example, in *Hodges*, 285 So. 3d at 713 (¶3), the defendant was found guilty of manslaughter relating to the ownership of a dangerous animal. On appeal, Hodges argued that his fundamental rights were violated because the State's instruction failed to instruct the jury of an essential element of the crime. *Id.* at 718 (¶28). Specifically, the State had omitted that in order to find him guilty, the jury needed to find that he had knowledge of his dogs' propensity for danger or mischief, as required by the relevant statute. *Id.* This Court found that such an omission did indeed violate Hodges's rights and, thus, reversed the conviction and remanded his case for a new trial. *Id.* at 722 (¶42) (citing *Bolton*, 113 So. 3d at 544 (¶4)).

¶24.　Another example is *Kivinen v. State*, 298 So. 3d 430, 434 (¶7) (Miss. Ct. App. 2021), in which the defendant was charged with aggravated assault. But instead of instructing the jury on the essential element of "serious bodily injury," the State's instruction informed the jury only on "bodily injury," omitting the word "serious" altogether.[15] *Id.* at 170-71 (¶17). We reversed Kivinen's conviction and remanded for a new trial based upon the omission, finding that it "broaden[ed] the grounds upon which [the defendant] was convicted." *Id.* at 171 (¶22) (quoting *Washington v. State*, 298 So. 3d 430, 436 (¶18) (Miss. Ct. App. 2020)).

---

[15] This Court found other errors within the jury instructions. *Kivinen*, 314 So. 3d at 172 (¶28-30). For brevity, we discuss only the omission of the word "serious."

14

¶25. In Lee's case, excluding the words "with intent to impair its use, verity or availability" from the tampering instruction excluded the *only* element of the crime regarding intent. As the above-cited cases demonstrate, such an exclusion is indeed a violation of Lee's fundamental rights and requires a reversal and remand for a new trial on that count. Therefore, even though Lee did not object to the jury instruction, we find that the omission of an essential element amounted to plain error and, thus, reverse and remand for a new trial on this specific count.

### C.    Sufficiency of the Evidence

¶26. Lee also argues that there was insufficient evidence to convict him of tampering with physical evidence. This Court applies a de novo standard of review to challenges to the sufficiency of the evidence. *Tubwell v. State*, 359 So. 3d 249, 250 (¶5) (Miss. Ct. App. 2023) (citing *Sims v. State*, 329 So. 3d 528, 534 (¶20) (Miss. Ct. App. 2021)). "We are not required to decide—and in fact we must refrain from deciding—whether we think the State proved the [requisite] elements. Rather, we must decide whether a reasonable juror could rationally say that the State did." *Poole v. State*, 46 So. 3d 290, 293-94 (¶20) (Miss. 2010). In so doing, "this Court views the evidence in the light most favorable to the State to determine if any rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Benthall v. State*, 311 So. 3d 697, 703 (¶20) (Miss. Ct. App. 2021) (citing *Martin v. State*, 214 So. 3d 217, 222 (¶15) (Miss. 2017)).

¶27. As previously stated, tampering with physical evidence must meet the following

15

elements: an individual, (1) believing that an official proceeding is pending or may be instituted, (2) acting without legal right or authority, intentionally destroys, mutilates, conceals, removes, or alters physical evidence (3) with the intent to impair its use, verity, or availability in the pending criminal investigation or prospective official proceeding.[16] In other words, we must determine whether the State presented sufficient evidence that Lee intentionally "tampered" with the firearms while knowing that legal action for his crime was likely imminent.

¶28. Lee specifically contends that "the State presented no evidence of [his] motive for leaving the guns in [T-West]'s car." After our review, we find that the State provided sufficient proof that a reasonable juror could have found all elements of the crime proven beyond a reasonable doubt. Further, we find there was sufficient evidence for the jury to infer Lee disposed of the guns to prevent the "evidence" from being used in a potential criminal proceeding. Lee's shooting of Price was recorded by a camera at the place of business where the shooting occurred. That video was played for the jury. The video depicted Lee shooting the victim with two guns, one in each hand. Detective Dunaway testified that Lee disclosed in his interview that he left the guns with T-West because "he didn't want to get caught riding around with them." In addition, Lee's interview with Dunaway was played for the jury. In that interview, which the jury heard, Lee stated he was "not [going] to ride with [T-West] with the[] guns." Drawing reasonable inferences in favor

---

[16] *See* Miss. Code Ann. § 97-9-125(a).

of the State, this Court finds that this evidence was sufficient for a reasonable juror to find Lee guilty beyond a reasonable doubt. Therefore, we find the evidence was not insufficient and decline to render judgment on this charge but remand it due to the failure to include an essential element of the crime charged in the instructions to the jury.

### III. Retroactive Misjoinder

¶29. Finally, Lee argues that he is entitled to a new trial under the doctrine of retroactive misjoinder because of his two charges of felon in possession of a firearm. Retroactive misjoinder "occurs when joinder of multiple counts was initially proper but, through later developments such as an appellate court's reversal of less than all convictions, joinder has been rendered improper." *Jones v. State*, 95 So. 3d 672, 678 (¶14) (Miss. Ct. App. 2011) (quoting *Williams v. State*, 37 So. 3d 717, 720 (¶7) (Miss. Ct. App. 2010)). In determining whether the doctrine of retroactive misjoinder applies, this Court employs a two-part test: "(1) was evidence admitted at trial on the vacated count that would not have otherwise been admissible on the remaining count and, if so, (2) can the defendant demonstrate clear prejudice as a result of the inadmissible evidence that was presented to the jury?" *Id.* (quoting *Williams*, 37 So. 3d at 721 (¶10)). Lee's argument fails when considering the evidence presented.

¶30. The evidence for Count II of felon in possession was indistinguishable from the evidence admitted for Count III of the same charged crime. Lee used two firearms to shoot the victim thirteen times to cause his death. That shooting occurred in the middle of a

parking lot at a local business where numerous other individuals were present. The entire shooting incident was recorded on video. If Lee had shot the victim with one firearm and not two, the jury still could have easily reached the same legal result as to murder. Lee's previous guilty plea to possession of a stolen firearm and the video of the shooting in question was sufficient evidence for a jury to find that Lee was indeed a felon at the time he used the firearms in the shooting. The State did not, nor did it have any reason to at the time, distinguish Lee's possession of the .380-caliber handgun and the 9mm handgun. Lee's murder conviction was legally sufficient based on one gun, and the exclusion of one weapon by merging the two counts of possession of a weapon by a felon, as Lee argues, would not have changed the end result of the murder conviction.

¶31.    Further, we recognize the longstanding precedent that "in any criminal prosecution the State is entitled to tell a rational and coherent story of the events surrounding the crime." *Affleck v. State*, 210 So. 3d 1067, 1075 (¶20) (Miss. Ct. App. 2015) (internal quotation marks omitted) (quoting *Turner v. State*, 478 So. 2d 300, 301 (Miss. 1985)). Thus, the State was entitled to provide evidence telling the full story of Lee's crime.[17] Therefore, the evidence that Lee used two firearms in the commission of Price's murder was proper regardless of whether he was charged with two counts of possession of a weapon by a felon. The *McGlasten* pronouncement did not modify the longstanding principle of Mississippi caselaw

---

[17] *See Archer v. State*, 118 So. 3d 612, 625 (¶54) (Miss. Ct. App. 2012); *Brown v. State*, 483 So. 2d 328, 330 (Miss. 1986).

that the State is allowed to tell the whole story of Lee's actions on the night in question.

¶32. Finally, the second inquiry of prejudice is contingent upon the first inquiry of admissible evidence, which would not have been admitted but for the now-dismissed count. Here, we find it was not impermissible for the State to have introduced evidence that Lee used two firearms to kill the victim whether he was charged with two counts or one count of possession of a weapon by a felon. Thus, this Court finds that retroactive misjoinder is not applicable.

## CONCLUSION

¶33. In summary, we affirm Lee's conviction and sentence for first-degree murder. The recent *McGlasten* decision makes Lee's two convictions of felon in possession of a firearm unlawful, and, thus, we merge his two convictions of felon in possession of a firearm into a single conviction and remand for sentencing. The tampering-with-physical-evidence jury instruction's exclusion of an essential element requires reversal; thus, we reverse his conviction of this count and remand that count for a new trial. Finally, we find retroactive misjoinder is inapplicable to the facts of this case.

¶34. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. BARNES, C.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**