723 So.2d 1221 (1998)
Kasey Orell EDWARDS, Appellant,
v.
STATE of Mississippi, Appellee.
No. 96-KA-01157 COA.
Court of Appeals of Mississippi.
November 24, 1998.
*1222 William W. Martin, Attorney for Appellant.
Office of the Attorney General by Billy L. Gore, Attorney for Appellee.
Before THOMAS, P.J., COLEMAN, and HINKEBEIN, JJ.
COLEMAN, J., for the Court:
¶ 1. On July 19, 1996, a jury in the First Judicial District of the Circuit Court of Harrison County found the appellant, Kasey Orell Edwards, guilty of the aggravated assault of Dennis A. Devilbiss. The trial court sentenced Edwards to serve a term of ten years in the custody of the Mississippi Department of Corrections (MDOC) but suspended six years of the ten-year term. Edwards, subsequently, moved the court for judgment notwithstanding the verdict or, in the alternative, a new trial. The trial court denied Edwards's post-conviction motion. Edwards has appealed to present the following three issues, which we quote verbatim from his brief:
A. WHETHER THE TRIAL COURT ERRED IN OVER-RULING THE APPELLANT'S "BATSON" CHALLENGES?
B. WHETHER THE COURT ERRED IN EXCUSING A JUROR FOR CAUSE OVER THE OBJECTION OF THE APPELLANT?
C. WHETHER THE COURT ERRED IN ALLOWING EVIDENCE OF OTHER CRIMES OVER THE OBJECTION OF THE APPELLANT? *1223 We resolve these three issues adversely to Edwards and affirm the judgment and sentence of the lower court.

I. FACTS
¶ 2. At approximately midnight on September 3-4, 1995, Shannon Andrew Beal and Walter Height drove Desiree Valder from Height's home in Harrison County to the Quick Check convenience store, which had closed for the night, and left her at a pay telephone. While Beal and Height drove to a near-by store and bought something to drink, Valder called Dennis Devilbiss at Devilbiss's home to ask Devilbiss to come for her at the Quick Check. After Devilbiss talked with Valder on the telephone, he and Jerrith Pekinto drove to the Quick Check in a pickup truck, which belonged to Regan Taylor, and Valder got into the truck to return to Devilbiss's home. Regan Taylor and Jerrith Pekinto had been in Devilbiss's home when Valder called Devilbiss.
¶ 3. Beal and Height returned from buying their drink and passed the closed and darkened Quick Check just in time to observe Devilbiss, Pekinto, and Valder leaving the convenience store in Taylor's pick-up. Beal and Height followed them back to Devilbiss's home, where they observed them enter it. Beal and Height returned to Height's home, where they found the appellant, Kasey Orell Edwards, who had returned to the Height home with his father from an all-day fishing trip. They told Edwards what had transpired. Edwards's interest in what Height and Beal told him stemmed from the fact that Valder was then pregnant with his child. Valder and Edwards were not married.
¶ 4. Sometime after Devilbiss, Valder, and Pekinto had returned to Devilbiss's home, Devilbiss and Valder left together and went to the home of a friend of Devilbiss, where they stayed for approximately twenty minutes before they returned to Devilbiss's home. Devilbiss and Valder had hardly returned to Devilbiss's home before Kasey Edwards, Beal, and Height rushed into the house through the unlocked front door. Edwards was waving a stick, which was variously described as a pool cue or as a handle of a shovel, with which he struck Devilbiss on the left thigh, his arm, and possibly his neck. In the melee Taylor was struck once across his back with the stick. Taylor immediately ran out of the house to a near-by house, where he called 911. The force of the repeated blows broke the stick.
¶ 5. Devilbiss ran down the hall to a bedroom, where his step-father kept his hunting rifles, kicked in the locked door, entered the bedroom, grabbed a gun, and loaded it with one shell. Then, he walked to the door of the bedroom, pointed the gun out into the hallway at Beal and Height, and told them to get out of his house. Pekinto, who had been hiding in another bedroom but had observed Devilbiss break down the bedroom door and load the rifle, ran out of the house. Once outside, Pekinto hid on the side of the house and waited for the fracas to end.
¶ 6. As Devilbiss stood in the doorway pointing a gun at Beal and Height, Edwards entered the hallway. Devilbiss ordered him to leave, but Edwards, followed by Beal and Height, continued walking toward him. Edwards grabbed the barrel of the rifle and began to struggle with Devilbiss for its possession. With Height's assistance, Edwards wrested the rifle away from Devilbiss and hit Devilbiss in his back with it. The gun fired a projectile that hit Beal in the back of the leg.
¶ 7. Valder left Devilbiss's house with Edwards and hid in the adjacent woods, where they observed the police and ambulances arrive after the call to 911. Height took Beal to the hospital where he required immediate, but lengthy, surgery. Devilbiss, who had staggered into the living room and also called 911, was transported to Gulfport Memorial Hospital for treatment of his injuries which consisted of whelps and two knots, one on his forearm and the other on his neck. The injury to his neck may have resulted from Edwards's striking him with the rifle, which broke in two after Edwards struck Devilbiss with it.
¶ 8. Because all three of Edwards's issues deal with events which occurred during his trial and because Edwards makes no issue of the weight and sufficiency of the evidence on which the jury convicted him of aggravated assault, we forego a review of the course of the trial other than to note the following. *1224 Pursuant to a plea bargain with the State, Beal, who had been jointly indicted with Edwards and Height for the aggravated assault on Devilbiss, pleaded guilty to simple assault, received a suspended six-months sentence in jail, and was placed on probation for a period of one year. He testified for the State. Height, the third co-indictee, and Edwards were tried together. The trial court granted instructions on self-defense and on simple assault which would have permitted the jury to convict both Edwards and Height of simple assault. The jury convicted Height of simple assault and Edwards of aggravated assault. Edwards is the only party to this appeal.

II. REVIEW, ANALYSIS, AND RESOLUTION OF THE ISSUES

A. Edwards's first issue
¶ 9. In his first issue, Edwards asserts that two of the State's peremptory challenges were not used in a race-neutral manner and, thus, the trial court committed reversible error by overruling his objection to the use of the State's two peremptory challenges. Specifically, Edwards objected to the State's use of peremptory challenges against potential jurors whom the record identifies only as "Mr. Felix" and "Miss Caldwell," but both of whom the record does identify as being of African-American descent. For the peremptory challenges of both Felix and Miss Caldwell, counsel for Edwards's co-defendant, Walter Height, requested the trial court to require the State to provide race neutral reasons for its peremptory strikes of those two venirepersons. Because the trial court and attorneys for both Edwards and Height agreed that they automatically joined any objection offered by the other during the selection of the jury, Edwards's assertions of error in his first issue were properly preserved for this Court's review.

1. Discussion of Applicable Law
¶ 10. In Batson v. Kentucky, 476 U.S. 79, 89, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court proscribed the prosecution "from racially discriminating through its exercise of peremptory strikes [of potential jurors]." McFarland v. State, 707 So.2d 166 (¶ 13) (Miss.1997). In Batson, the Supreme Court outlined a three part test for determining whether peremptory challenges were racially motivated. Stewart v. State, 662 So.2d 552, 557 (Miss.1995); McFarland, 707 So.2d at 171 (¶ 14).
¶ 11. First, the party questioning the validity of the peremptory challenge must "make a prima facie showing" that race was the motivation for the challenge. Stewart, 662 So.2d at 557. Batson originally required the following if the defendant who challenged the State's use of its peremptory challenge was to succeed in making a prima facie showing that race was the State's motivation for the peremptory challenge:
1. That [the defendant] is a member of a "cognizable racial group";
2. That the prosecutor has exercised peremptory challenges toward the elimination of veniremen of his race; and
3. That facts and circumstances raised an inference that the prosecutor used his peremptory challenges for the purpose of striking minorities.
Conerly v. State, 544 So.2d 1370, 1372 (Miss. 1989) (citing Batson, 476 U.S. at 96-97, 106 S.Ct. 1712); see also Berry v. State, 703 So.2d 269 (¶ 94) (Miss.1997) (quoting Conerly and reaffirming test). However, in Gilmore v. State, No. 93-KA-00064-COA, slip op. at 2-3, 691 So.2d 1032 (Miss.Ct.App.1996), Judge Roger H. McMillin, Jr., related the process by which the United States Supreme Court expanded the Batson prohibition against discrimination in the use of peremptory challenges to include both racial and gender discrimination in both criminal and civil cases. Therefore, it appears that the requirement that a party be a number of a "cognizable racial group," has been eliminated. The other two criteria remain.
¶ 12. This Court also notes that the United States Supreme Court has held that a white defendant can object under Batson to the systematic exclusion of jurors of another race from his jury. Bush v. State, 585 So.2d 1262, 1267 (Miss.1991) (citing Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991)), and applying the Supreme Court's *1225 decision to peremptory challenges in this state; see also Kolberg v. State, 704 So.2d 1307 (¶¶ 25, 27) (Miss.1997) (holding that Batson applies to white defendants); Berry, 703 So.2d at 294 (¶ 94) (holding that white defendant had "standing to challenge discriminatory peremptory strikes"). Thus, to satisfy the first prong of the Batson test, i.e., establishing a prima facie case of discrimination, Edwards as a white defendant was required to show "that the prosecutor ... used peremptory challenges on persons of race and that the circumstances [gave] rise to the inference that the prosecutor used the peremptory challenges in order to strike minorities." Bush, 585 So.2d at 1267-68. See Kolberg, 704 So.2d at 1312-13 (¶ 25) (outlining test for determining whether peremptory challenge was improperly racially motivated); Griffin v. State, 607 So.2d 1197, 1202 (Miss. 1992) (explaining evidence necessary to establish prima facie case of discrimination).
¶ 13. If an objecting party like Edwards successfully presents a prima facie case for discrimination, the burden shifts to the party exercising the peremptory challenge to furnish a race-neutral reason for striking the member of the venire. Stewart, 662 So.2d at 558. The rationale given for striking the potential juror does not have to rise to the level of a challenge for cause. Bush, 585 So.2d at 1268. After the party who exercised the peremptory challenge has provided the race-neutral reason for the peremptory challenge, the objecting party is given the opportunity to rebut the challenging party's explanation. Id. Finally, it is up to the trial court to determine whether the objecting party has upheld the burden of proving that the peremptory challenge was exercised to exclude a potential juror because of his race. Stewart, 662 So.2d at 558. If the objecting party does not rebut the striking party's explanation, the court only looks to the explanation given by the striking party to make its decision. Bush, 585 So.2d at 1268; Berry, 703 So.2d at 294 (¶ 96).
¶ 14. In this case, after Edwards's objections to the State's peremptory challenges to Felix and Caldwell, the State immediately offered race-neutral explanations without waiting for the trial court to find that Edwards had established a prima facie case of discrimination which would necessitate a race-neutral explanation. However, the issue of whether a prima facie case was established becomes moot once the striking party offers a race-neutral explanation. Collins v. State, 691 So.2d 918, 926 n. 3 (Miss.1997) (quoting Hernandez v. New York, 500 U.S. 352, 359, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)). Thus, our query becomes whether the State's reasons for exercising its peremptory challenges on Felix and Caldwell were indeed race-neutral or merely a pretext for racial discrimination. Collins, 691 So.2d at 926. Cognizant of the foregoing review of the development of Batson law, we analyze and review the trial court's acceptance of the State's racially neutral reasons for its peremptory challenges of Felix and Chandler.

2. Peremptory Challenge of Felix
¶ 15. The State had exercised four of its peremptory challenges before the judge reached the name of Mr. Felix, but the record does not reveal the race of the four venirepersons whom the State peremptorily challenged. When the State exercised its fifth peremptory challenge on Felix, Height's counsel inquired of the judge, "What point do we need to ask for a Batson neutral reason?" The judge replied, "When they are called out." Height's counsel then requested the State to state its racially neutral reason for having peremptorily challenged Mr. Felix.
¶ 16. Without asking the judge to determine whether Height had made a prima facie case of the State's racially discriminatory use of its peremptory challenges, the prosecutor explained that he had challenged Felix because Felix was employed by the Department of Human Services in the Child Support Division. The prosecutor continued that the State intended to call as its witness Edwards's girlfriend, Desiree Valder, who, though unmarried, was approximately seven to eight months pregnant. The prosecutor then added that he struck Felix because Felix stated that he had worked with both of Edwards's defense attorneys and pointed out that one of Edwards's attorneys, John Johnson, had served as master in chancery court. In rebuttal, Johnson stated that he had never *1226 met Felix or worked with him. However, during voir dire, Felix actually stated that he knew Wayne Woodall, Edwards's other attorney, and Woodall's associate, James Steel. The trial court overruled Height's objection and found the State's reason for its peremptory challenge of Felix to be race-neutral. After the court's ruling, the prosecutor realized his confusion and stated for the record that part of his reason for striking Felix was because Felix stated that he had worked with Steel.
¶ 17. In Brown By and Through Webb v. Blackwood, 697 So.2d 763, 773-74 (Miss. 1997), the Mississippi Supreme Court held that striking a venireman out of concern for how his profession might affect his perception of the case was a valid race-neutral explanation for the exercise of a peremptory challenge. See also Lockett v. State, 517 So.2d 1346, 1356 (Miss.1987) (listing employment as a valid race neutral reason for exercising peremptory challenges in Appendix I). Further, the court has upheld peremptory challenges used to remove veniremen who knew the defense counsel as racially neutral. Griffin, 607 So.2d at 1202; see also Lockett v. State, 517 So.2d at 1356 (listing "juror knew defendant's counsel" as a valid race neutral reason for exercising peremptory challenges in Appendix I). Felix's answers during voir dire establish that the State's explanation of why it peremptorily struck Felix were valid race neutral reasons.
¶ 18. In Batson, the Supreme Court opined: "We have confidence that trial judges, experienced in supervising voir dire, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors." Batson, 476 U.S. at 97, 106 S.Ct. 1712. Perhaps it is in this same spirit that the Mississippi Supreme Court has posited that it greatly defers to the decision of the trial court in its decision that reasons stated for the peremptory challenge of a venireman were or were not race-neutral. McFarland, 707 So.2d at 172 (¶ 16); Stewart, 662 So.2d at 558. We afford this deference to the trial court because it is able to observe the demeanor of the striking attorney and other pertinent circumstances. Stewart, 662 So.2d at 558. Accordingly, this Court will not reverse the finding of the trial court on this issue unless it is "clearly erroneous or against the overwhelming weight of the evidence." Id. (quoting Lockett, 517 So.2d at 1349-50); see also McFarland, 707 So.2d at 172 (¶ 16) (reaffirming standard of review).
¶ 19. Because the Mississippi Supreme Court has approved similar, if not identical, race-neutral reasons for the exercise of a peremptory challenge, and because Mr. Felix's answers given during voir dire support the State's race-neutral reasons which it offered to support its peremptory challenge of Mr. Felix, this Court affords due deference to the trial court's acceptance of those race-neutral reasons given by the State. We therefore affirm the trial court's finding that the State's peremptory challenge of Mr. Felix was race-neutral.

3. Peremptory Challenge of Miss Caldwell
¶ 20. The State's sixth peremptory challenge was against the venireperson, Miss Caldwell. When Height's counsel requested that the prosecutor state a race-neutral reason for that peremptory challenge, the district attorney, again without waiting for the judge to find that Height had made a prima facie case of the State's discriminatory use of its peremptory challenges, stated that he struck Caldwell for the sole purpose of reaching the next potential juror, Brenda Moore-Pickens. The prosecutor stated that he believed that Moore-Pickens would be a better juror for the case than Caldwell. Further, he urged that his strike could not have been racially motivated since both Moore-Pickens and Caldwell were women of African-American descent. On appeal, Edwards asserts that the State did not offer a valid race neutral reason for striking Caldwell.
¶ 21. In Simon v. State, 633 So.2d 407, 411 (Miss.1993), vacated on other grounds by Simon v. Mississippi, 513 U.S. 956, 115 S.Ct. 413, 130 L.Ed.2d 329 (1994), the defendant challenged on appeal the State's peremptory challenge of one particular juror on the ground that it was racially motivated. During the trial on the merits, the State explained *1227 that it struck the potential juror for the purpose of reaching the next juror on the list who they believed would be a better juror. Simon, 633 So.2d at 411. The trial court held that this was a valid race neutral explanation. The supreme court subsequently affirmed the trial court's decision. Id. Accordingly, in the case sub judice, this Court affirms for the same reasons as it affirmed the trial court's acceptance of the State's peremptory challenge of Mr. Felix, the trial court's acceptance of the State's peremptory challenge of Ms. Caldwell. Thus, we resolve Edwards's first issue adversely to him.

B. Edwards's second issue
¶ 22. For his second issue, Edwards contends that the trial court erred by excusing for cause venireperson Anderson over Edwards's objection. Early in his voir dire of the venirepersons, the judge asked, "Have any of ya'll or a close member of your family ever been charged or convicted of an assault of any kind?" Anderson responded, "I would rather come up there," to which the judge replied, "Sure, come on. Attorneys approach." The record indicates that there was an unreported bench conference, after which the judge continued his voir dire examination.
¶ 23. During jury selection, the State requested that venireperson Anderson be excused for cause. The discussion between counsel for the State and for Edwards and Height as contained in the record indicates that Anderson told the trial judge and attorneys that his grandson was in jail in Texas. The State asserted that during this discussion, Anderson stated that he could not be fair to the State for this reason. However, counsel for Edwards and Height recalled the unreported bench conference differently because they stated that they thought Anderson had indicated that he could be fair and impartial. The trial judge stated that he understood Anderson to state that he did not feel that he could be impartial. Consequently, the judge excused Anderson for cause as the State had requested.
¶ 24. This Court is confined by the record of a case and will not consider any matters that do not appear within it. Rushing v. State, 711 So.2d 450(¶ 11) (Miss.1998). The appellant bears the burden of making sure that the facts which support his claim of error are present in the record for appellate review. Ballenger v. State, 667 So.2d 1242, 1252 (Miss.1995). "This Court cannot review an allegation of error without having before it a reviewable record" for it cannot rely upon mere assertions of fact presented in the appellant's brief. Ross v. State, 603 So.2d 857, 861 (Miss.1992).
¶ 25. Contrary to what the State and trial judge stated in the record that they heard, Edwards asserts in his brief that Venireman Anderson stated during his conference at the bench that he could be fair and impartial. However, as we noted, the record is blank on Anderson's statements to the trial court. Edwards's counsel did not request that Anderson be brought back into chambers so that he could be questioned on the record in order to preserve his objection for review once he realized that the prosecutor and trial judge both had different recollections of what was said. Neither has Edwards "prepare[d] a statement of the evidence or proceedings from the best available means, including recollection," as Rule 10(c) of the Mississippi Rules of Appellate Procedure permits.[1] Because *1228 this Court cannot review an allegation of error in the absence of a reviewable accord, it can proceed no further with its analysis of this issue.
¶ 26. In its brief, the State notes Code Section 13-5-79, the portion of which that is relevant to this issue provides: "Any juror shall be excluded, however, if the court be of opinion that he cannot try the case impartially, and the exclusion shall not be assignable for error.""Miss.Code Ann. 13-5-79 (1972) (emphasis added). In Coverson v. State, 617 So.2d 642, 645 (Miss.1993), the trial court allowed six of the State's eight challenges for cause. On appeal, the appellant attacked as error the trial court's allowing three of the State's challenges for cause, but the supreme court cited Section 13-5-79 and opined, "On procedural grounds, once the judge exercised his discretion and determined that the jurors probably could not be impartial, then the determination may not be assigned on appeal as an error...." Id. at 646. The supreme court then concluded:
In short, the important and long-established maxim has been: (1) that a defendant has no right to have specific prospective jurors try his or her case, and (2) that the defendant cannot complain on appeal of a particular exclusion if the end result was a jury composed of fair and impartial jurors.
Id. We have cited Coverson and Section 13-5-79 to demonstrate that had the record in the case sub judice reflected the content of the bench conference in which venireperson Anderson participated, we would necessarily have affirmed the trial court's allowing the State's challenge of Anderson for cause.

C. Edwards's third issue
¶ 27. Edwards's third issue is that the trial court erred by admitting evidence of other crimes for which he was not indicted over his objection. The genesis of this issue is found in the State's direct examination of Regan Taylor, whose truck Devilbiss had driven to get Desiree Valder at the Quick Check convenience store after Valder had called Devilbiss. We quote the following portions of the record to begin our review of Edwards's third issue:
Q. And what did Mr. Edwards and the other individual do after you walked into the kitchen?
A. Well, they followed me out, and not too soon after I walked into the kitchen is whenever I felt a stick come across my back.
Q. Did you see who hit you with the stick?
A. No, sir, his back was turned towards me  I mean, my back was towards him. I'm sorry.
Q. Okay. Can you describe the blow?
A. Well, it was  it came right across my back, and it  the stick was splintered, so I assume that it was broken.
Q. Did you see the stick?
A. Well, when he was waving it, yes, I did.
¶ 28. Taylor then identified the two parts of the broken stick as the stick with which he had been struck in the back after he had seen Edwards waving it around after Edwards had entered Devilbiss's home.
¶ 29. As the foregoing quoted portion of the record indicates, Edwards's counsel did not object until after the State moved to introduce the two parts of the stick into evidence after Taylor had identified the two parts. Edwards's counsel initially objected to the introduction of the parts of the stick "because there is no crime charged in the indictment that Regan Taylor was the victim." Edwards's counsel's next objection to their introduction was that "there [was] no correlation between the striking of [Taylor] and either of these defendants [Edwards and Height], whatsoever." Counsel's third objection ostensibly to the introduction of the parts of the stick was that Edwards's striking Taylor was "evidence of an uncharged crime, and probative value is outweighed by its prejudicial effect." Simply put, "Evidence of other crimes is inadmissible."
¶ 30. The trial court responded to Edwards's counsel's multiple objections to the *1229 introduction of the two parts of the stick as follows:
Even though the jury may conclude that Mr. Edwards is the one that struck Mr. Taylor, and it may be, in fact, evidence of another crime, all of that is part of the same res gestae, same logical chronological factual scenario. I think that testimony would be admissible.
Mr. Taylor, has identified the fact that Mr. Edwards did have a stick in his hand. He did state that he was struck by a stick. He identified this stick. It is all part of the same res gestae.

The objection, in the Court's opinion, goes more toward weight or credibility. Your objection is noted. It is overruled. Mark it in evidence.
¶ 31. After the two parts of the stick were introduced into evidence, the State's direct examination of Taylor continued as follows:
Q. All right. What did you do after you were hit with the stick?
A. Well, he hit me with the stick, then that is when I heard the 
Q. When you say he, who are you talking about?
A. My back was toward him.
Q. Who had the stick last that you saw?
A. The man in the gray suit [seated at counsel's table].
Q. Mr. Edwards?
A. Yes.
¶ 32. Our purpose in quoting extensively from the record is two-fold. First, it is to demonstrate that while Edwards couches his argument on his third issue in terms of Regan Taylor's testimony that he was struck on his back with the stick, defense counsel's objections were to the State's introduction of the two parts of the stick after Taylor had finished his testimony about his being struck on the back with the stick. Second, it is to demonstrate that the State pursued the matter in an attempt to infer that it was Edwards who had struck Taylor.
¶ 33. On appeal, Edwards argues that the admission of Taylor's testimony was reversible error because it was evidence of a crime committed by Edwards but not charged in the indictment  assault, whether simple or aggravated, on Taylor. Thus, the trial court admitted Taylor's testimony over Edwards's belated objection in violation of Mississippi Rule of Evidence 404(b).[2] He urges that even if Rule 404(b) allowed the admission of Taylor's testimony about his being struck across the back with the stick, the error remained because its probative value did not substantially outweigh its prejudicial effect under the balancing test outlined in Rule 403.[3] The State insists that Taylor's testimony that someone hit him with the stick found at the scene was properly admitted because that crime was part of the res gestae of the crime of assaulting Devilbiss with which Edwards was charged. The State further asserts that this testimony was admissible because the prosecution had an interest in telling a coherent story and because the crime demonstrated motive, opportunity, intent, and absence of mistake or accident under Rule 404(b).
¶ 34. Rule 103(a) of the Mississippi Rules of Evidence provides:
(a) Effect of Erroneous Ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
(1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific *1230 ground was not apparent from the context....
M.R.E. 103(a). Decisions regarding whether a piece of evidence is relevant are left to the discretion of the trial judge. Bounds v. State, 688 So.2d 1362, 1369 (Miss.1997). On appeal, the trial court's decision will not be reversed unless it is shown that it abused its discretion by admitting the evidence. Bounds, 688 So.2d at 1369. Generally, evidence of the commission of a crime not charged in the indictment is not admissible against the accused. Townsend v. State, 681 So.2d 497, 506 (Miss.1996); Ballenger, 667 So.2d at 1256; Duplantis v. State, 644 So.2d 1235, 1246 (Miss.1994). The Mississippi Supreme Court has repeatedly held that the "admission of evidence of unrelated crimes for the purpose of showing the accused acted in conformity therewith" is reversible error. Ballenger, 667 So.2d at 1256.
¶ 35. However, Mississippi Rule of Evidence 404(b) states that evidence of other crimes may be admitted into evidence for the purpose of proving "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." See Ballenger, 667 So.2d at 1256; Lester v. State, 692 So.2d 755, 783 (Miss.1997). Furthermore, "where another crime or act is so interrelated to the charged crime so as to constitute a single transaction or occurrence or a closely related series of transactions or occurrences, proof of the other crime or act is admissible." Townsend, 681 So.2d at 506. The other crime must be "integrally related to time, place, and fact" to the crime for which the accused is standing trial. Id. In essence, admission of this evidence must be necessary to tell a complete and coherent story and prevent confusing the jury. Id.; Ballenger, 667 So.2d at 1257. The Mississippi Supreme Court has held "that the State has a `legitimate interest in telling a rational and coherent story of what happened....'" Brown v. State, 483 So.2d 328, 330 (Miss. 1986) (quoting Turner v. State, 478 So.2d 300, 301 (Miss.1985)). See also Mackbee v. State, 575 So.2d 16, 28-29 (Miss.1990) (holding that evidence indicating that the defendant had murdered two people was admissible in his trial for the murder of one of the victims because the bodies of the victims were found together and the evidence of one murder could not be separated from the other); Wheeler v. State, 536 So.2d 1347, 1352 (Miss.1988) (holding that evidence of murder of one police officer could be admitted in trial of assault on another police officer since both incidents occurred at the same time).
¶ 36. In the case at hand, evidence that Taylor was struck across his back with the same stick which he had seen Edwards wielding and waving about was admissible for the same reasons of which the supreme court approved in Mackbee and Wheeler. According to the State's witnesses, the assault on Taylor occurred in the same place at approximately the same time and under the same set of circumstances as the assault on Devilbiss. Thus, Edwards's assault on Taylor was "integrally related to time, place, and fact" to his assault on Devilbiss, the crime with which he was charged in the indictment. Townsend, 681 So.2d at 506. The attack on Taylor did constitute part of the res gestae of the aggravated assault against Devilbiss as the trial court found. Thus, Taylor's testimony was also admissible for this reason. See Townsend, 681 So.2d at 507.
¶ 37. Edwards's defense was that of self-defense, and the trial court granted instructions on self-defense. Edwards argued before the jury that he was not the aggressor, that instead Devilbiss became the aggressor when he pointed his stepfather's hunting rifle down the hall at Edwards and Height. Thus, this Court finds that evidence of an assault on Devilbiss by Edwards countered Edwards's assertions, which were made through the testimony of Desiree Valder, Edwards and Height's witness, that he attacked Devilbiss solely in self-defense. See M.R.E. 404(b); Ballenger, 667 So.2d at 1256.
¶ 38. To summarize our review of Edwards's third issue, this Court reiterates that Edwards's counsel never objected to Taylor's testimony that he had been struck across his back with the stick which Taylor had seen Edwards waving about after Edwards entered Devilbiss's home. The objection, which was to the State's introduction into evidence of the two parts of the stick, followed Taylor's testimony. Mississippi Rule of Evidence *1231 103(a) requires "a timely objection ... stating the specific ground of objection," if error is to "be predicated upon a ruling which admits ... evidence...." Therefore, Rule 103(a) allows this Court to resolve Edwards's third issue adversely to him. Moreover, the assault on Taylor was "integrally related to time, place, and fact" to the aggravated assault which the jury found Edwards to have committed on Devilbiss. Hence, it allowed the State to give the jury a more complete picture of what transpired inside Devilbiss's home after Edwards and Height entered it. Finally, Taylor's testimony tended to rebut Edwards's defense of self-defense. For all of these reasons, we resolve Edwards's third issue adversely to him and affirm the trial court's grant of the State's motion to introduce into evidence the two pieces of the stick about which Regan Taylor testified.

III. SUMMARY
¶ 39. The trial court did not err when it accepted the State's race-neutral reasons for its peremptory challenges of venirepersons Felix and Chandler, which it gave in response to Height's Batson objections. As for Edwards's second issue, we determined that we would not reach the merits of Edwards's objection to the trial court's striking venireperson Anderson for cause because the record is silent about the bench conference which the trial court conducted on the subject of Anderson's qualification to serve as a juror in this case. We noted, however, that Section 13-5-79 as interpreted and applied by the supreme court in Coverson, 617 So.2d at 646, seems to preclude any hope of success for Edwards on his second issue. Finally, under the circumstances which the record reflects, Regan Taylor's testimony that he was struck on his back with the stick which he had seen Edwards waving about after Edwards entered Devilbiss's home did not constitute error with which to charge the trial judge. Mississippi Rule of Evidence 103(a) alone warrants our resolution of Edwards's third issue against him. The Harrison County, First Judicial District, Circuit Court's judgment of Edwards's conviction of aggravated assault and its sentence imposed on Edwards are affirmed.
¶ 40. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT, OF APPELLANT'S CONVICTION OF AGGRAVATED ASSAULT AND ITS SENTENCE OF APPELLANT TO SERVE TEN (10) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH SIX (6) YEARS OF THAT TERM SUSPENDED, LEAVING FOUR YEARS FOR APPELLANT TO SERVE, ARE AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.
BRIDGES, C.J., McMILLIN and THOMAS, P.JJ., DIAZ, HERRING, HINKEBEIN, KING, PAYNE, and SOUTHWICK, JJ., CONCUR.
NOTES
[1] Rule 10(c) provides:

(c) Statement of the Evidence When No Report, Recital, or Transcript Is Available. If no stenographic report or transcript of all or part of the evidence or proceedings is available, the appellant may prepare a statement of the evidence or proceedings from the best available means, including recollection. The statement should convey a fair, accurate, and complete account of what transpired with respect to those issues that are the bases of appeal. The statement, certified by the appellant or his counsel as an accurate account of the proceedings, shall be filed with the clerk of the trial court within 60 days after filing the notice of appeal. Upon filing the statement, the appellant shall simultaneously serve notice of the filing on the appellee, accompanied by a short and plain declaration of the issues the appellant intends to present on appeal. If the appellee objects to the statement as filed, the appellee shall file objections with the clerk of the trial court within 14 days after service of the notice of the filing of the statement. Any differences regarding the statement shall be settled as set forth in subdivision (e) of this Rule.
M.R.A.P. 10(c).
[2] Rule 404(b) reads:

Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
M.R.E. 404(b).
[3] Rule 403 states:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
M.R.E. 403.