¶ 1. This is an appeal from the Circuit Court of Pike County, Honorable Mike Smith presiding, where Tavares Reed was convicted of two counts of sale of cocaine within 1500 feet of a church. Mr. Reed was sentenced to serve concurrent terms of sixty years at the Mississippi Department of Corrections and to pay fines of $10,000 on each count, plus legal fees, court costs, and restitution of moneys lost in the drug transaction. On appeal to this Court, Mr. Reed offers the following issues: *Page 498 
 1) WHETHER THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE AND THEREFORE THE TRIAL COURT ERRED IN OVERRULING REED'S MOTION FOR A NEW TRIAL.
 2)WHETHER THE TRIAL COURT ERRED WHEN IT EXCUSED A JUROR WHO HAD BEEN SELECTED FOR DUTY AFTER THE CLOSE OF VOIR DIRE.
Finding no error, we affirm.
 FACTS
¶ 2. On July 9, 1998, the McComb Police Department began an operation wherein they would send a confidential drug informant, Eric Wolf, into a known drug area in the city of McComb for the purpose of purchasing illegal drugs. Mr. Wolf had experience with this sort of work and was recommended by the Adams County Narcotics Task Force. Two McComb police officers, Officer Mark Anderson and Officer Eric Allen conducted the operation. The officers searched Wolf and his car, gave him $60 in cash and placed a transmitter, one miniature tape recorder, one digital recorder, and a videotape recorder in his car. The officers stationed themselves a few blocks away from Wolf's car and waited for Wolf to make a transaction.
¶ 3. After asking a woman where he could buy some drugs, Wolf encountered Reed, the appellant. Officer Anderson was familiar with Mr. Reed and immediately recognized his voice upon his conversation with Wolf. Mr. Wolf told Mr. Reed he wanted to purchase $60 worth of crack cocaine. Mr. Reed replied at that time he could only supply two rocks worth $40. He and Wolf made the $40 transaction. Before Wolf left, Mr. Reed told him to wait, so he could get the other rock Wolf requested. Within two minutes, Mr. Reed returned to Wolf with the third rock wherein Wolf gave Mr. Reed another $20-a second transaction.
¶ 4. After these two transactions, Wolf met the waiting officers at another location and gave the officers the crack cocaine that he had purchased from Mr. Reed. An analysis by the Crime Lab confirmed that the substance was, in fact, crack cocaine.
¶ 5. At trial, Officer Anderson testified the voice he heard via the wire placed in Wolf's car was Mr. Reed's. In addition, Mr. Wolf testified at trial that the man he purchased the crack cocaine from in the operation was Mr. Reed. Further, one of the audiotapes and the videotape were played for the jury at trial. Mr. Reed took the stand in his defense and admitted it was he who was on the videotape, but denied he sold any cocaine to Mr. Wolf. The jury returned a verdict of guilty to both counts. Mr. Reed objects to the jury's verdict to convict, stating it was against the overwhelming weight of the evidence, and therefore, his motion for new trial should have been granted.
¶ 6. Mr. Reed further objects to the fact a potential juror was released subsequent to the close of voir dire, alleging error on the part of the trial judge in ordering the release of this juror.
¶ 7. The facts applicable to this particular issue are as follows. Ms. Thelma Brown was called to jury duty on this case, and upon the close of voir dire, she was selected to serve as a juror. After observing Mr. Reed's father in the courtroom, she realized she knew who Mr. Reed was and that she knew his father and brother. She told a deputy of this realization, and the deputy relayed this information to the judge. The judge asked Ms. Brown if she had realized she knew who Mr. Reed was prior to the close of voir dire. Ms. Brown replied she had not. She told the judge she was not aware of who Mr. Reed was until she spotted his father in the courtroom, and after jury selection she put the two together. She explained that Mr. Reed and his father do not share the same name and that is why she did not realize who Mr. Reed was before jury selection was finalized. She also disclosed that Mr. Reed's younger brother frequented her *Page 499 
home. Mr. Reed's family, in fact, lives in the same neighborhood with Ms. Brown and her family. The judge then asked Ms. Brown if she thought she would be able to be an impartial juror in this trial despite the fact she knew Mr. Reed's father. She replied she "couldn't really be fair." The judge then released Ms. Brown as a juror over the objection of Mr. Reed's attorney. Mr. Reed claims counsel for the State had the obligation to make any and all objections to Ms. Brown during voir dire and State's counsel should have discovered the impartiality of Ms. Brown during that time. Mr. Reed alleges trial court error in allowing the release of Ms. Brown after voir dire had taken place. In other words, Mr. Reed believed Ms. Brown should have been allowed to serve as a juror regardless of her likely biases in his favor.
 LEGAL ANALYSIS STANDARD OF REVIEW
¶ 8. The standard of review regarding denial of a motion for new trial stated in Wetz v. State is that the trial judge should not order a new trial unless he is convinced the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would be to sanction an unconscionable injustice. Wetzv. State, 503 So.2d 803, 812 (Miss. 1987). Temple v. State,498 So.2d 379, 382 (Miss. 1986). This standard was upheld in the case of McClain v. State, in which the court found that, "New trial decisions rest in the sound discretion of the trial court, and the motion should not be granted except to prevent an unconscionable injustice. We reverse only for abuse of discretion, and on review we accept as true all evidence favorable to the State. McClain v.State, 625 So.2d 774, 778 (Miss. 1993). Therefore, this Court must look to see if the weight of the evidence is contrary to the jury verdict, such that allowing it to stand would be an unconscionable injustice, and in doing so, decide whether or not the trial court judge abused his discretion in denying the motion, while looking at the evidence in the light most favorable to the State.
¶ 9. As to the standard of review regarding jury selection, one of the oldest and most fundamental principles of law is that every defendant is entitled to a fair trial by an impartial jury.Collins v. State, 99 Miss. 47, 50, 54 So. 665, 665 (1911). This Court may not reverse the trial judge's decisions regarding jury selection unless there is an abuse of discretion. Pierre v. State,607 So.2d 43 (Miss. 1992). "The right to a fair trial by an impartial jury is fundamental and essential to our form of government. It is a right guaranteed by both the federal and state constitutions." Simon v. State, 688 So.2d 791, 803 (Miss. 1997) (quoting Johnson v. State, 476 So.2d 1195, 1209 (Miss. 1985)). A person is competent to be a juror if the juror has no interest, bias or prejudice in the prosecution, and the juror has no desire to reach a result other than that gained from the evidence and the law in the case. Johnson, 666 So.2d at 794 (quoting Simmons v.State, 241 Miss. 481, 489, 130 So.2d 860, 863 (1961)).
 DISCUSSION
WHETHER THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OFThe EVIDENCE AND THEREFORE THE TRIAL COURT ERRED INOVERRULING REED'S MOTION FOR A NEW TRIAL.
¶ 10. In presenting this issue, appellant's brief mainly deals with the testimony of the three witnesses put on by the prosecution, and whether or not their testimony presents enough weight to sustain the jury verdict. Jason Alexis, an employee of the Mississippi State Crime Lab who tested the substance sold to Wolf by Mr. Reed, testified to his findings that the substance was, in fact, crack cocaine. The State called Alexis as an expert witness to verify for the jury the substance Mr. Reed was accused of selling to Wolf was crack cocaine. *Page 500 
¶ 11. Appellant objects to the testimony of Officer Anderson on the basis that Officer Anderson was not a witness to the actual alleged cocaine purchase. However, Officer Anderson, in his testimony, never claims to have seen the event take place. He only testified the voice he heard during surveillance was Mr. Reed's. He states he was familiar with Mr. Reed and knew the sound of his voice. Officer Anderson's testimony elicited only the fact he recognized Mr. Reed's voice, and that was the purpose for which he was called. As he was not called to the stand to give an account of events he actually saw, this objection is meritless.
¶ 12. Mr. Reed also objects to the testimony of Eric Wolf, the paid informant. In his brief, Mr. Reed points out Mr. Wolf was paid to make the transaction and he had talked to the district attorney prior to trial. These facts are for the consideration of the jury, and in this case the jury weighed the facts and found against the defendant.
¶ 13. Appellant also attacks Mr. Wolf's testimony by arguing because he did not write down a description of the person from whom he purchased the drugs he could not pinpoint that it was Mr. Reed. In his brief, he cites Ashford v. State, 583 So.2d 1279
(Miss. 1991). In Ashford, a confidential informant was used to purchase drugs, and gave a physical description of the seller that was not the same as the physical appearance of the defendant. This was the only direct evidence the State had to identify the defendant, and it was contradictory, so there was reasonable doubt causing a reversal.
¶ 14. The case at hand is easily distinguishable from the Ashford
case because here there was not a discrepancy in the description, and there was further corroborating evidence the seller of the drugs was Mr. Reed. In Ashford the confidential informant had misidentified the defendant's height and weight. In this case, Mr. Wolf clearly identified Mr. Reed during his testimony on the stand. He did not write down a description of Mr. Reed in his report, and Mr. Reed indicates that because of this, Mr. Wolf could not tell if it really was Mr. Reed. This argument forgets that juries make fact determinations where they are offered competing versions of the facts all the time. In addition, there is corroborating evidence found in the videotape supporting the testimony given by Mr. Wolf. It is also supported through the voice recognition evidence provided in Officer Anderson's testimony.
¶ 15. Mr. Reed claims the witness testimony offered by the State does not warrant the verdict given by the jury. However, this Court should not reverse the decision of the trial judge to deny a motion for new trial because in this case the trial judge did not abuse his discretion in allowing this evidence and denying Mr. Reed's motion. The weight of the evidence here clearly rests in favor of the State, it is relevant to the case and, moreover, the denial of a new trial here does not amount to an "unconscionable injustice" or abuse in discretion. McClain, 625 So.2d at 781. This court, on review, must accept as true all relevant evidence favorable to the State. Id. In addition, it is well settled that a jury's duty is to resolve the conflicts in the testimony before them. It is not the reviewing court's responsibility to determine whether the jury should have believed the testimony of any witness. Groseclose v. State, 440 So.2d 297 (Miss. 1983). The jury in this case believed the evidence offered by the State, not Mr. Reed. It is the jury's responsibility to weigh the evidence of both parties, and here, they have done their job. Therefore, Mr. Reed's conviction should stand on this issue.
WHETHER THE TRIAL COURT ERRED WHEN IT EXCUSED A JUROR WHO HADBEEN SELECTED FOR DUTY AFTER THE CLOSE OF VOIR DIRE.
¶ 16. The law on this issue is clear. A juror cannot under any *Page 501 
circumstances, serve on a jury where he will not be impartial and will be biased toward one party or the other. Whether or not a juror should be excused is within the trial court's discretion, and that decision will only be reversed for an abuse of discretion. Pierre v. State, 607 So.2d 43 (Miss. 1992). The State cites Edwards v. State, 723 So.2d 1221 (Miss. Ct. App. 1998), which holds "if the court be of the opinion that he cannot try the case impartially," then the juror will be excluded. Id. at 1227-28. Further, a defendant has no right to have a specific prospective juror try his or her case, nor may he appeal a particular exclusion if the end result of jury selection is a jury composed of fair and impartial jurors. Id. at 1228.
¶ 17. The Appellant implies in his argument he should have had the luxury of a possibly biased juror, and because he was not, he should get a reversal. Ms. Thelma Brown expressly stated she could not be fair in this trial. She voluntarily told the deputy at the courthouse she knew Mr. Reed's father and brother. This was information which was rightly disclosed to the judge to prevent partiality and bias. She stated herself that she could not be fair and the situation "makes me nervous . . . I don't like that." Ms. Brown could not have been an impartial juror; therefore, the trial court's decision to exclude Ms. Brown was in accord with Edwards
and should not be reversed. Simply put, appellant does not get to keep Ms. Brown on the jury just because he wants her there.
¶ 18. Mr. Reed points out the State should have found out Ms. Brown had a bias before the end of voir dire, and because it did not, she should have been allowed as a juror. Mr. Reed only cites one case, Jones v. State, in support of his objection to Ms. Brown's release. Jones v. State, 381 So.2d 983 (Miss. 1980). Jones says an abuse will be found on appeal where there was clear prejudice to the defendant from undue constraint. The undue constraint the appellant in the Jones case was referring to dealt with the type of questions he wanted to ask the jurors in voir dire, and in fact he was able to ask the questions anyway. The court in Jones held the appellant's contention that he was constrained by not being allowed to ask those questions was without merit.
¶ 19. The Jones case does not really appear to be applicable to the case at hand. Appellant argues he was constrained by the trial court judge's not allowing Ms. Brown to sit on the jury. It is not constraint to refuse to allow an impartial juror to sit on a jury; it is insuring the proper operation of the justice system. To allow a prejudiced juror on a jury is to allow an incompetent juror to serve. Even though Ms. Brown's prejudice would work in favor of the defendant, her sitting on the jury would still be a corruption of the judicial process. It does not matter whether Ms. Brown's prejudice would work for or against the appellant, the simple fact she was prejudiced would prevent her from being a competent juror, thus making it necessary for the trial judge to rightly exercise his discretion and remove her from the jury. The fact this was not discovered in voir dire does not make a difference. It is the job of the judge to insure that the judicial process is not prejudiced and to exercise his discretion to prevent this from happening. That is exactly what the trial judge did in this case and therefore there was no abuse of discretion in removing Ms. Brown from the jury. Therefore, the trial judge was within his right to excuse this juror, and was not in error.
¶ 20. Appellant having failed to prove an abuse of discretion in either of the issues, this Court affirms the judgment of the lower court.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF PIKE COUNTY CONVICTIONOF TWO COUNTS OF UNLAWFUL SALE OF COCAINE WITHIN 1500 FEET OF ACHURCH AND SENTENCE OF SIXTY YEARS IN THE CUSTODY OF THE *Page 502 MISSISSIPPI DEPARTMENT OF CORRECTIONS FOR EACH COUNT TO RUNCONCURRENTLY AND $10,000 FINE FOR EACH COUNT IS AFFIRMED. ALL COSTOF THIS APPEAL ARE ASSESSED TO PIKE COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P. JJ., IRVING, LEE,MOORE, PAYNE, AND THOMAS, JJ., CONCUR. MYERS, J., NOTPARTICIPATING.