GRIFFIS, P.J.,
for the Court:
¶ 1. Joseph Williams was convicted of aggravated assault. On appeal, Williams argues that his conviction should be reversed because: (1) the circuit court erred when it allowed the prosecutor, witnesses, and the jury instructions to refer to him by his nickname, Too Sweet; (2) the circuit court erred when it denied his motion to strike a prospective juror for cause; and (3) the evidence was insufficient to support his conviction. We find no error and affirm.
FACTS
¶ 2. On the evening of October 31, 2008, Joe Bibbs, Tyrone Forrest, and Williams got together in Winona, Mississippi, for a night of drinking and hanging out. They bought some liquor and drove around for a while in Williams’s truck. They then went to Earnest Curtis’s house, which was on a country road outside of the Winona city limits. The three men then went to a local night club, while Curtis stayed home. A few hours later, at approximately midnight, the three men returned to Curtis’s house.
¶ 3. Curtis testified that he was asleep in the bed when he heard a truck pull up in the driveway. He got out of bed and went to the front door to look outside. He saw Forrest in the truck vomiting, while Bibbs was outside the truck with his shirt off. Curtis thought Bibbs looked angry.
¶ 4. Bibbs testified that he and Williams had gotten into an argument. Bibbs wanted to go back to Winona to see his girlfriend, but Williams refused to drive him *983 there. Williams wanted to spend the night at Curtis’s house to avoid roadblocks.
¶ 5. Curtis testified that he heard gunshots a few moments later. He then saw that Bibbs was lying on the ground and that Williams had a handgun. Bibbs testified that he was at the back of the truck when Williams came around from the driver’s side and started firing the handgun at him. Williams shot Bibbs eight or nine times. Bibbs survived.
¶ 6. Williams and Forrest loaded Bibbs into Curtis’s car and drove him to the hospital. Bibbs testified that as they were driving to the hospital in Winona, Williams repeatedly asked him what he would tell the hospital staff about the incident. Bibbs said he was afraid of what Williams might do, so he decided to make up a fake story. He told security personnel at the hospital that he had been shot at a night club.
¶ 7. Bibbs was later transported to the University of Mississippi Medical Center (UMMC) in Jackson, Mississippi, for further medical care. Bibbs testified that once he was in Jackson and away from Williams, he felt safe enough to tell the truth about the incident. He told UMMC personnel what had really happened, and they called the police.
¶ 8. Williams was charged with aggravated assault. The jury returned a verdict of guilty. The circuit court sentenced Williams to serve twenty years in the custody of the Mississippi Department of Corrections, with eight years suspended and five years of supervised probation.
ANALYSIS

1. Whether the circuit court committed plain error when it failed to exclude Williams’s nickname, Too Sweet.

¶ 9. At trial, Williams was identified by his nickname, Too Sweet, on several occasions. The prosecutor used the nickname twice in his opening statement and once in his closing argument. Two witnesses used the nickname a total of five times. In addition, the jury instructions referred to “Williams a/k/a Too Sweet.”
• ¶ 10. Williams argues that the nickname served no evidentiary purpose and that the prosecutor used it merely to inflame the jury. He argues that the nickname should have been excluded as inadmissible character evidence under Mississippi Rule of Evidence 404.
¶ 11. However, Williams failed to raise a contemporaneous objection to use of the nickname at trial. Therefore, this issue is barred from consideration on appeal unless the circuit court committed plain error. Willis v. State, 999 So.2d 411, 414 (¶ 9) (Miss.Ct.App.2008).
¶ 12. “Only an error so fundamental that it creates a miscarriage of justice rises to the level of plain error.... Plain error occurs where the substantive rights of a defendant are violated.” Id. at 414 (¶ 9) (citing Dixon v. State, 953 So.2d 1108, 1116 (¶ 22) (Miss.2007)). In Willis, this Court held there was no plain error where the prosecutor elicited the defendant’s nickname, Little Black, from a witness. Id. at 414 (¶¶ 8, 10). Likewise, we find no plain error here. Therefore, this issue is procedurally barred.

2. Whether the circuit court erred when it denied Williams’s motion to strike a prospective juror for cause.

¶ 13. Williams argues the circuit court committed reversible error when it denied his motion to strike a prospective juror for cause. He argues that the juror should have been stricken because she was friends with Curtis, one of the State’s key witnesses.
*984 ¶ 14. “A person is competent to be a juror if the juror has no interest, bias or prejudice in the prosecution, and the juror has no desire to reach a result other than that gained from the evidence and the law in the case.” Reed v. State, 764 So.2d 496, 499 (¶ 9) (Miss.Ct.App.2000) (citations omitted). “This Court may not reverse the [circuit court’s] decisions regarding jury selection unless there is an abuse of discretion.” Id. (citation omitted).
¶ 15. During voir dire, Williams’s attorney asked the prospective jurors if any of them were friends with Curtis. Judy Jones responded that Curtis had been in the National Guard with her husband and that she and Curtis were “pretty close friends.” When asked if that would influence her, she said, “It might.” When asked if it would prevent her from being fair and impartial, she said, “I don’t think so.”
¶ 16. The circuit judge then asked Jones some follow-up questions. He asked her if her relationship with Curtis would cause her to believe Curtis’s testimony more than any other witness’s testimony. She answered, “No.” He then asked her if she could decide the case based on the evidence and the law. She answered, “Yes.”
¶ 17. Williams’s attorney moved to strike Jones for cause, and the circuit court denied the motion. Williams’s attorney did not use a peremptory strike on her, and she was ultimately impaneled and sat on the jury.
¶ 18. The Mississippi Supreme Court addressed the issue of a relationship between a juror and a witness in Owens v. State, 177 Miss. 488, 171 So. 345 (1936). There, two jurors were related to two key witnesses for the State. Id. at 504-05, 171 So. at 349-50. The two jurors assured the circuit court that they would treat their relatives’ testimonies the same as other witnesses’ testimonies and that they would decide the case based on the evidence and the law. Id. The circuit court accepted their assurances and allowed the two jurors to sit on the panel, and the Mississippi Supreme Court found no reversible error. Id.
¶ 19. This Court has held that: “ ‘[J]u-rors take their oaths and responsibilities seriously, and when a prospective juror assure[s] the court that, despite the circumstance that raises some question as to his qualification, this will not affect his verdict, this promise is entitled to considerable deference.’ ” Parker v. State, 825 So.2d 59, 64 (¶16) (Miss.Ct.App.2002) (quoting Scott v. Ball, 595 So.2d 848, 850 (Miss.1992)).
¶ 20. Here, Jones assured the circuit court that her friendship with Curtis would not affect her judgment. She did appear to change her position when the circuit judge asked her the follow-up questions. We find that the circuit court did not abuse its discretion in accepting her assurances and allowing her to sit on the jury. Therefore, we find this issue has no merit.

3. Whether the evidence was sufficient to support the conviction.

¶ 21. Williams argues that the State failed to present sufficient evidence that he shot Bibbs “purposely” or “knowingly.” His defense was that he suffered from post-traumatic-stress syndrome, which occasionally caused him to blackout. He claimed that he was blacked out at the time of the shooting; therefore, he could not have acted purposely or knowingly. He challenged the sufficiency of the evidence in a motion for a directed verdict, which was denied.
¶ 22. When reviewing the denial of a motion for a directed verdict based on an objection to the legal sufficiency of the *985 evidence, we examine the evidence in the light most favorable to the State to determine whether “any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005) (citation omitted).
¶ 23. Aggravated assault is defined by Mississippi Code Annotated section 97-3-7(2)(b) (Supp.2010), which, in pertinent part, states:
A person is guilty of aggravated assault if he ... attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm[.]
The indictment charged Williams with “purposely” or “knowingly” causing bodily injury to Bibbs with a deadly weapon. Thus, the State was required to prove beyond a reasonable doubt that Williams acted with either of those mental states.
¶ 24. There was ample evidence for a rational juror to determine beyond a reasonable doubt that Williams shot Bibbs either purposely or knowingly. Bibbs testified that he and Williams had gotten into an argument. Bibbs wanted to go back to Winona to see his girlfriend, but Williams refused to drive him there. Bibbs testified that he was standing behind the truck when Williams came around from the driver’s side and opened fire on him. Williams shot Bibbs eight or nine times. A rational juror could infer that Williams repeatedly shot Bibbs out of anger aroused by their argument.
¶ 25. As for Williams’s theory of defense of post-traumatic-stress syndrome, the only evidence before the jury that supported the theory was a statement Williams had made to the police. In that statement, he said he remembered most of the events that night. He remembered riding around in his truck with Bibbs and Forrest. He remembered going to Curtis’s house. He remembered carrying Bibbs to the hospital. He remembered talking to hospital employees about Bibbs’s wounds. But he could not remember the shooting. When asked by the police why he could not remember the shooting, Williams mentioned that he suffered from post-traumatic-stress syndrome.
¶ 26. Bibbs testified that, as they were driving to the hospital in Winona, Williams repeatedly asked him what he would tell the hospital staff about the incident. That testimony could indicate to a rational juror that Williams was aware of what he had done and was worried about the consequences.
¶ 27. Since there was evidence that Williams was aware of his actions both before and after the shooting, a rational juror could infer that he was aware of his actions at the time of the shooting. This issue has no merit.
¶ 28. THE JUDGMENT OF THE MONTGOMERY COUNTY CIRCUIT COURT OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH EIGHT YEARS SUSPENDED AND FIVE YEARS OF SUPERVISED PROBATION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MONTGOMERY COUNTY.
LEE, C.J., IRVING, P.J., BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. MYERS, J., NOT PARTICIPATING.