# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CP-01094-COA

JERRY UNDRE STEWART A/K/A DUKE A/K/A                    APPELLANT
JERRY STEWART

v.

STATE OF MISSISSIPPI                                              APPELLEE

DATE OF JUDGMENT:           08/14/2024
TRIAL JUDGE:                HON. WILLIAM HUNTER NOWELL
COURT FROM WHICH APPEALED:  COAHOMA COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:     JERRY UNDRE STEWART (PRO SE)
ATTORNEY FOR APPELLEE:      OFFICE OF THE ATTORNEY GENERAL
                            BY: BARBARA WAKELAND BYRD
NATURE OF THE CASE:         CIVIL - POST-CONVICTION RELIEF
DISPOSITION:                AFFIRMED - 03/24/2026
MOTION FOR REHEARING FILED:

**BEFORE BARNES, C.J., WEDDLE AND LASSITTER ST. PÉ, JJ.**

**WEDDLE, J., FOR THE COURT:**

¶1.     Jerry Stewart appeals the Coahoma County Circuit Court's order denying his sixth motion for post-conviction collateral relief (PCR). Finding no error, we affirm the circuit court's order.

## FACTS

¶2.     On July 28, 1995, Stewart was convicted of murder and sentenced to life imprisonment.[1] On March 24, 1998, Stewart's direct appeal was dismissed as untimely by

---

[1] The circuit court noted in its order that Stewart was released on parole while serving his sentence for this murder conviction. Stewart was eligible for parole due to the murder occurring prior to July 1, 1995. *See Pickle v. State*, 369 So. 3d 94, 98 (¶15) (Miss. Ct. App. 2023); *see also* Miss. Code Ann. § 47-7-3(1)(d) (Rev. 2023). While out on parole, Stewart

this Court. Subsequently, Stewart filed five applications for leave to proceed in the circuit court. Four of his applications were denied by our Supreme Court, and the circuit court ultimately denied post-conviction relief after our Supreme Court granted Stewart leave to file a PCR motion.

¶3.    On February 26, 2016, Stewart filed a sixth application for leave from the Supreme Court to proceed with a PCR motion in the circuit court. He claimed (1) ineffective assistance of counsel; (2) the circuit court's failure to individually examine jurors who allegedly communicated during the examination of witnesses; and (3) newly discovered evidence. On January 18, 2017, our Supreme Court dismissed Stewart's motion on his claim of ineffective assistance of counsel and jury misconduct but granted Stewart's motion on his claim of newly discovered evidence. Stewart filed his PCR motion in January 2017, and the circuit court ordered an evidentiary hearing. Stewart argues in his claim of newly discovered evidence that one of the jurors who served in his murder trial, Lawanda Tyler, was biased due to her relationships with the State's witness DeAngelo Fiser and Fiser's family. In support of his claim, Stewart submitted the affidavit of David Harvey. Harvey's affidavit states that he is John Fiser's biological brother and that John Fiser and his wife, Catherine Fiser, are Fiser's grandparents. Harvey claims that Tyler had a close relationship with Catherine Fiser and that Tyler had children with John and Catherine's son. Harvey claims

---

was convicted of capital murder in the Bolivar County Circuit Court. On November 12, 2014, Stewart was sentenced to life imprisonment without eligibility for parole or early release for the capital murder conviction.

2

that after Fiser was sentenced to prison, John and Catherine Fiser were angry with Stewart; blaming him for Fiser's imprisonment. Crucially, in his affidavit, Harvey stated, "I witnessed Tyler telling [Fiser's grandmother] that she had been selected to serve as a [j]uror in Jerry Stewart's trial and that she would do everything within her power to make certain that Jerry Stewart be found guilty and sent to prison like her grandson."

¶4.     Almost six months after Stewart filed his PCR, he filed a motion to supplement the record to include an affidavit from DeAndre Malone, alleging similar connections between Tyler and DeAngelo Fiser.[2] Our Supreme Court denied his motion. During the evidentiary hearing, Stewart's attorney informed the circuit court that David Harvey was unavailable to testify. However, out of an abundance of caution, the circuit court allowed Stewart to make a proffer of the testimony of DeAndre Malone.[3] Malone, the affiant in Stewart's motion to supplement, which was denied by the Mississippi Supreme Court, was present at the evidentiary hearing and Stewart's 1995 trial. Malone also claimed that Tyler had a personal relationship with Fiser prior to Fiser testifying at Stewart's 1995 trial. Malone testified that he was childhood friends with Stewart and Fiser. He further testified that he had witnessed Fiser and Tyler "interact with each other, like small talking, laughing, or whatever, like they really know each other" at Fiser's grandmother's house. On cross-examination, he claimed

---

[2] Malone did not allege that Tyler made statements ensuring Stewart's conviction, as was alleged in Harvey's affidavit.

[3] The circuit court also declined to hear testimony from Stewart's former trial counsel because it was deemed unnecessary.

that although he was at the 1995 trial, he did not realize that Tyler was a juror until Stewart asked him to do research on her twenty years after the trial.

¶5.     On the first day of Stewart's 1995 trial, his attorney asked for Tyler to be removed because it would be impossible for her to be fair and impartial because she was related to a victim. The court stated that a decision would be made after he questioned her. With all attorneys present, the court called Tyler in chambers to ask about her relationship. Tyler explained that she was not related to the victim, but her children were related to the State's witness, Fiser. She also stated that she did announce that her children were related to one of the witnesses, but never specified which witness. She further explained that she did not initially make the relationship known because the circuit court specifically asked the potential jurors to raise their hand if anything about their relationship with any potential witness would affect them. The court asked again whether Tyler could treat Fiser like any other witness, to which she responded, "Yeah. I really don't know him personally because he wasn't living here or something. But I just know him because of his uncle," and Fiser was "just another person." Following the in-chambers conference, none of the attorneys, including Stewart's attorney, had any follow-up questions or raised any challenge to Tyler serving on the jury.

¶6.     On August 14, 2024, the circuit court entered its order denying Stewart's PCR motion. On appeal, Stewart claims that the circuit court erred by (1) denying his PCR motion, (2) failing to conduct the hearing in a timely manner, and (3) limiting evidence and witness testimony.

4

**STANDARD OF REVIEW**

¶7.     "[T]he appropriate standard of review for [a] denial of [a PCR motion] after an evidentiary hearing is the clearly erroneous standard." *Whitehead v. State*, 299 So. 3d 899, 904 (¶15) (Miss. Ct. App. 2020). "[H]owever, we review the circuit court's legal conclusions under a de novo standard of review." *Mallard v. State*, 395 So. 3d 1273, 1275 (¶5) (Miss. Ct. App. 2024).

**DISCUSSION**

### I.     Order Denying PCR Motion

¶8.     In reviewing Stewart's PCR motion and supporting affidavit from Harvey, his allegations regarding the statement Harvey overheard Tyler say to Fiser's grandmother were sufficient for the circuit court to grant Stewart an evidentiary hearing. To be entitled to an evidentiary hearing on a post-conviction claim for relief, "a [defendant] must demonstrate, by affidavit or otherwise, that there are unresolved issues of fact that, if concluded favorably to the defendant, would warrant relief[;] [t]his may not be accomplished through the defendant's own unsupported allegations." *Crockett v. State*, 334 So. 3d 1232, 1240-41 (¶26) (Miss. Ct. App. 2022). However, once the hearing is granted the petitioner bears the burden of proving "by a preponderance of the evidence that he is entitled to the relief." *Roberson v. State*, 354 So. 3d 422, 426 (¶23) (Miss. Ct. App. 2022) (quoting Miss. Code Ann. § 99-39-23(7) (Rev. 2020)).

¶9.     Due to Harvey's absence, he was not available to testify under oath and therefore was

not subject to cross-examination. The circuit court allowed Stewart to make a proffer of the testimony of Malone. However, Malone's testimony revealed more of the same allegations that were dealt with during jury selection at the 1995 trial. The remaining content of Harvey's affidavit also contained matters sufficiently dealt with during the jury selection: Tyler's relationship to Fiser, Fiser's family, and allegedly others. Following the hearing, the circuit court determined that the newly discovered evidence was "nothing more than an attempt to re[-]litigate the adequacy of voir dire under a new heading." We agree.

¶10. To constitute newly discovered evidence, Stewart must show that "(1) the new evidence was discovered after the trial; (2) it could not by due diligence have been discovered prior to trial; (3) it is material to the issue and not merely cumulative or impeaching; and (4) the new evidence will probably produce a different result or verdict in the new trial." *Wilson v. State*, 256 So. 3d 25, 27 (¶9) (Miss. Ct. App. 2018). "Relief must be denied if the [Stewart] fails to meet any one of these four elements." *Id*. Following the evidentiary hearing, the circuit court found that the evidence Stewart submitted fell short of "evidence, not reasonably discoverable at the time of trial, which is of such nature that it would be practically conclusive that, if it had been introduced at trial, it would have caused a different result in the conviction or sentence." *See Kidd v. State*, 221 So. 3d 1041, 1044 (¶14) (Miss. Ct. App. 2016) (quoting Miss. Code Ann. § 99-39-23(6) (Rev. 2015)).

¶11. Although Harvey did not testify and Malone's testimony was proffered, the circuit judge stated on the record that he would consider both Harvey's affidavit and the proffered

testimony in making his ruling and give the evidence the weight and credibility it deserves. "[T]he [circuit] judge . . . sits as the trier of fact and assesses the totality of the evidence as well as the credibility of witnesses." *Corrothers v. State*, 404 So. 3d 112, 118 (¶19) (Miss. 2024). During his testimony, Malone asserted that Tyler and Fiser were friends, and he saw them interact on a few occasions.[4] Malone maintained that he witnessed them talking and smiling at Fiser's grandmother's house after the trial.[5] He also testified that he was at the 1995 trial but did not realize that Tyler was a member of the jury until Stewart asked him to research Tyler in 2016. Again, Stewart discovered or could have discovered this information that he claims is new evidence for his 1995 trial.

¶12.   Here, we find that Stewart failed to meet his burden of proof and is not entitled to a new trial on the alleged newly discovered evidence. Although portions of Harvey's affidavit were a sufficient basis for an evidentiary hearing, the credible proof presented at the hearing was insufficient to meet the preponderance-of-the-evidence standard. It is clear from the record the existence of a relationship between Tyler and Fiser was not newly discovered

---

[4] Notably, our Supreme Court has held that "'jurors take their oaths and responsibilities seriously, and when a prospective juror assure[s] the court that, despite the circumstance that raises some question as to his qualification, this will not affect his verdict, this promise is entitled to considerable deference.'" *Williams v. State*, 61 So. 3d 981, 984 (¶19) (Miss. 2011) (quoting *Parker v. State*, 825 So. 2d 59, 64 (¶16) (Miss. Ct. App. 2002)). Here, Tyler assured the court that she would not give Fiser any more or less credibility because of her connection to him, and she was allowed to sit on the panel.

[5] Our Supreme Court has also held that "mere acquaintance or even family relationships with parties or those related to parties is not sufficient to require that a juror be excused for cause." *Bell v. State*, 879 So. 2d 423, 435 (¶49) (Miss. 2004).

evidence, and Stewart is now attempting to impeach the sworn statement Tyler made in chambers during Stewart's 1995 trial. Accordingly, we find the circuit court properly denied Stewart's PCR motion.[6]

## II. Delay of Evidentiary Hearing

¶13. Stewart next argues the evidentiary hearing was delayed for seven years, and because of that, Harvey was unavailable to testify on the date the hearing was conducted.[7] The affidavit of Harvey was the sole basis for Stewart's newly discovered evidence claim. During the evidentiary hearing, Stewart failed to argue how the delay prejudiced his defense. Instead, he offered the testimony of Malone as a "substitute witness." On appeal, Stewart incorrectly pointed out that the delayed evidentiary hearing could have been remedied if the trial court had accepted Harvey's affidavit as evidence. However, although the circuit court did not admit the affidavit into evidence, it is clear from the record that the circuit did take the affidavit into consideration. During the evidentiary hearing, the circuit court pointed out that our Supreme Court granted leave for Stewart to file his PCR motion solely based on Harvey's affidavit. However, because Harvey was unavailable and Malone essentially

---

[6] Additionally, the circuit court pointed out that Tyler was only one of twelve jurors who voted to convict Stewart. She was not a foreperson, and there was no evidence submitted that showed that the verdict would have been different if she had been replaced by an alternate.

[7] The evidentiary hearing was originally set for August 8, 2017, but Stewart's PCR motion was not heard until July 17, 2024. The reason for the delay is not clear from the record. The circuit court and Stewart both pointed out that the reason for the delayed evidentiary hearing is unknown.

8

offered the same testimony, he allowed Stewart to make a proffer of Malone's testimony since he was present at the evidentiary hearing. Although we are concerned with the length of delay, Stewart only contends that he was unable to procure Harvey for the hearing because he moved, but he failed to argue that Harvey's unavailability was due to the delay. *See Wheeler v. State*, 164 So. 3d 501, 508 (¶20) (Miss. Ct. App. 2015) (finding that the record reflects no abuse of discretion in the trial court's finding that Wheeler failed to show a claim of a denial of a state or federal right). Further, Stewart made no attempt to show what efforts were made, if any, to preserve Harvey's testimony by deposing him or having him present at the hearing.

### III. Testimony of 1995 Trial Attorney

¶14. Stewart alleges that the circuit erred by not allowing his 1995 trial attorney to testify. The circuit court found that the testimony of the trial attorney is not necessary for the newly discovered evidence claim. The newly discovered evidence became known in 2016, and his 1995 trial attorney would not have knowledge of the alleged newly discovered evidence. Stewart essentially attempted to argue his claim for ineffective assistance of counsel by claiming that his trial attorney could verify why he did not object to Tyler remaining on the jury after he learned of her connection to Fiser. He also argued that his trial attorney would have been able to testify about improper juror communication. However, our Supreme Court dismissed the claim as time-barred and barred by res judicata. Therefore, the circuit court had no jurisdiction to consider the issues of ineffective assistance of counsel and juror

communications because they were outside the scope of the Supreme Court's order. *See Havard v. State*, 312 So. 3d 326, 341 (¶56) (Miss. 2020).[8] Accordingly, we find that the trial court correctly declined to hear testimony from Stewart's 1995 trial attorney.

## CONCLUSION

¶15. For the foregoing reasons, we affirm the circuit court's order denying post-conviction relief.

¶16. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, EMFINGER AND LASSITTER ST. PÉ, JJ., CONCUR.**

---

[8] Nonetheless, the trial attorney's testimony would simply reiterate the fact that the information about Tyler did not constitute newly discovered evidence because it was addressed during Stewart's 1995 trial.